1  RICHARD J. SIDEMAN (State Bar No. 55383)
   E-Mail:    rsideman@sideman.com
2  STEVEN M. KATZ (State Bar No. 164617)
   E-Mail:    skatz@sideman.com
3  EMILY J. KINGSTON (State Bar No. 184752)
   E-Mail:    ekingston@sideman.com
4  SIDEMAN & BANCROFT LLP
   One Embarcadero Center, Eighth Floor
5  San Francisco, California 94111
   Telephone:    (415) 392-1960
6  Facsimile:    (415) 392-0827

7  Attorneys for Randolph George

8               UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                SAN FRANCISCO DIVISION

11

12  UNITED STATES OF AMERICA,              CASE NO. CR-01-0326 MMC

13              Plaintiff,

14       v.                               **DEFENDANT'S MOTION PURSUANT
                                          TO 28 U.S.C. § 2255 TO VACATE, SET
15  RANDOLPH GEORGE,                      ASIDE OR CORRECT SENTENCE**

16              Defendant.                **Date:  To Be Determined
                                          Time:  To Be Determined
17                                        Place: Courtroom # 7, 19th Floor**

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION PURSUANT TO
28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE ...................1

RESPONSES TO SPECIFIC § 2255 FORM INQUIRIES ...........................................1

MEMORANDUM OF POINTS AND AUTHORITIES.............................................8

I.      STATEMENT OF FACTS AND PROCEDURAL HISTORY ..........................8

II.     DISCUSSION.........................................................................................15

 A. Introduction and Summary of Arguments ...........................................15

 B. Legal Analysis ................................................................................16

  1. Legal Standards Regarding Ineffective Assistance of Counsel
Claims.....................................................................................16

  2. Topel & Goodman Rendered Constitutionally Defective
Assistance of Counsel at Trial, During the Sentencing Phase and
on Appeal.................................................................................19

   (a) Topel & Goodman Rendered Constitutionally Deficient
Assistance of Counsel at Trial by Failing to Conduct a
Pretrial Investigation and Failing to Present Corroborating
Evidence ...................................................................20

    (i) 1991 and 1992 Returns:...................................24

   (b) Orlando Antonini:.......................................................25

   (c) Harry Gordon Oliver, II:..............................................29

   (d) Bonnie Newman: ........................................................31

   (e) Mark Shemaria: .........................................................32

   (f) Sean Svendsen:..........................................................33

   (g) John M. Youngquist: ...................................................34

    (i) 1993 Return: .................................................35

    (ii) Conclusion as to All Counts:............................39

    (iii) Topel & Goodman Rendered Constitutionally

LAW OFFICES

SIDEMAN & BANCROFT LLP

ONE EMBARCADERO CENTER, 8TH FLOOR

SAN FRANCISCO, CALIFORNIA 94111

Deficient Assistance of Counsel When it Failed to Call Expert Witnesses for Trial or Sentencing or to Ask for An Evidentiary Hearing on Tax Loss..................40

(iv)    The Prejudice Occasioned by Topel & Goodman's Ineffective Assistance of Counsel at Trial and Sentencing is Evident in the First Appeal and the Ninth Circuit's Opinion Thereon.......................................48

3.    Mr. George is Entitled to an Evidentiary Hearing.....................................50

III.    CONCLUSION ...............................................................................................................50

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

§ 2255 Motion to Vacate, Set Aside or Correct Sentence

# TABLE OF AUTHORITIES

**Page**

## CASES

Adams v. United States ex rel. McCann,
  317 U.S. 269 (1942). ..................................................................................17

Brown v. Myers,
  137 F.3d 1154 (9th Cir. 1998). .........................................................18, 40, 49

*Bryant* v. *Scott* (5th Cir. 1994) 28 F.3d 1411 .................................................18

Doganiere v. United States
  914 F.2d 165 (9th Cir. 1990) ..................................................................19, 50

Hart v. Gomez,
  174 F.3d 1067 (9th Cir. 1999). ...............................................................18

Lockhart v. Fretwell, 113 S. Ct. 838, 844 (1993) ...........................................16

Lord v. Wood
  184 F.3d 1083 (9th Cir. 1999) ............................................................18, 39, 40

McMann v. Richardson,
  397 U.S. 759 (1970). ....................................................................................17

Reynoso v. Giurbino
  462 F.3d 1099 (9th Cir 2005). ..................................................................17

Riley v. Payne,
  352 F.3d 1313 (9th Cir. 2003)(..................................................................18, 39

Rios v. Rocha
  299 F.3d 796 (9th Cir. 2002) ......................................................................18

Rompilla v. Beard
  545 U.S. 374 (2005) ....................................................................................17

Silva v. Woodford,
  279 F.3d 825 (9th Cir. 2000) ..........................................................18, 46, 49

United States v. Ameline,
  409 F.3d 1073 (9th Cir. 2005)................................................................3, 15

United States v. Booker,
  543 U.S. 220 (2005) ..........................................................................................3

United States v. Combs,
  470 F.3d 1294 (9th Cir. 2006) ......................................................................3

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

United States v. Swanson
      943 F.2d 165 (9th Cir. 1991) ...........................................................................................17

Wiggins v. Smith,
      539 U.S. 510 (2003) ....................................................................................17, 18, 19, 40

## STATUTES

26 U.S.C. § 7203 ...............................................................................................................2, 11

28 U.S.C. § 2255 .......................................................................................................... passim

U.S.S.G. § 2T1.1 ...................................................................................................................45

U.S.S.G. § 2T1.4 (1994)........................................................................................................45

## OTHER AUTHORITIES

ABA Standards on Criminal Justice, The Defense Function, Standard 4-1.3........................17, 49

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

**NOTICE OF MOTION AND MOTION PURSUANT TO
28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE**

PLEASE TAKE NOTICE that the Defendant, Randolph George (hereinafter "Mr. George"), hereby moves pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or Correct his Sentence on the basis of the ineffective assistance of his trial counsel. This motion is based on this notice, the ensuing Memorandum of Points and Authorities, the Declarations of (1) Orlando Antonini, (2) Randall Dick, (3) Randolph George, (4) Lisa Lubag, (5) Roger Metzler, (6) Bonnie Newman, (7) Harry Gordon Oliver, II, (8) Morris Robinson, (9) Mark Shemaria, (10) Sander Stadtler, (11) Sean Svendsen, and (12) John M. Youngquist, filed contemporaneously herewith and incorporated fully herein, the papers already on file in this action, and such other arguments or evidence as may be presented to the Court at a hearing on this motion. Specifically incorporated herein are the 2001 through 2008 pretrial, trial and post-trial hearing transcripts, the record on appeal, and the 2004 post-trial Pre-Sentence Report.

<u>**RESPONSES TO SPECIFIC § *2255* FORM INQUIRIES**</u>

Mr. George provides the following responses to the specific inquiries contained in the 28 U.S.C. § 2255 form provided by the Court:

1. <u>Place of Detention</u>:

Mr. George is scheduled to voluntarily surrender pursuant to this Court's April 23, 2008, Amended Order for Voluntary Surrender on Monday, May 5, 2008. The Court has recommended in its Amended Judgment entered September 4, 2007, that Mr. George be designated to serve his term of incarceration in the Lompoc Camp. Mr. George has not yet received formal notification from the Bureau of Prisons that he has been designated to any facility.

2. <u>Name and location of Court which, and name of judge who, imposed sentence</u>:

Mr. George was sentenced by the Honorable Maxine M. Chesney, District Judge of the United States District Court for the Northern District of California located at 450 Golden Gate Avenue, 19th Floor, San Francisco, California 94102.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

3.    The indictment number or numbers (if known) upon which the offense or offenses for which sentence was imposed:

Mr. George was indicted on August 30, 2001, charged with two felony counts of filing a false tax return for taxable years 1991 and 1992, in violation of 26 U.S.C. § 7206(1), and one misdemeanor count of failing to file a tax return for taxable year 1993, in violation of 26 U.S.C. § 7203. The Indictment was assigned Case Number CR-01-0326 MMC.

4.    The date upon which sentence was imposed and the terms of the sentence:

Following his November 13, 2002, conviction by a jury on all three counts of the Indictment, the Court sentenced Mr. George on May 19, 2004 to fifteen (15) months of imprisonment on the false return counts and twelve (12) months of imprisonment on the failure to file count, to run concurrently. The Court also imposed a $20,000 fine, $70,000 in restitution, and a $125 special assessment, all of which Mr. George has paid. *See* District Court Docket Entries ## 120, 121, 122. On May 20, 2004, the Court entered a written Judgment and Sentence. Id., Entry # 99. An amended Judgment and Sentence was entered on September 4, 2007, to include the Court's recommendation to the Bureau of Prisons that Mr. George be designated to the Lompoc Camp and reflect Mr. George's change of address. Id., Entry 154.

5.    Check whether a finding of guilty was made:

(a) after a plea of guilty:          _____
(b) after a plea of not guilty:      \_\_X\_\_
(c) After a plea of nolo contenders: _____

6.    If Mr. George was found guilty after a plea of not guilty, check whether that finding was made by:

(a) a jury                   \_\_X\_\_
(b) a judge without a jury   _____

7.    Did Mr. George appeal from the judgment of conviction or the imposition of sentence?

Mr. George filed a Notice of Appeal from the Judgment and Sentence on May 26, 2004. *See* District Court Docket Entry # 100.

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

8.    If the answer to question 7 was yes, list the name of each court to which Mr. George appealed and the result of each such court to which he appealed:

Mr. George appealed the Judgment and Sentence entered against him to the United States Court of Appeals for the Ninth Circuit. On August 23, 2005, the Ninth Circuit entered an opinion affirming Mr. George's conviction but remanding the case to this Court pursuant to the holding in United States v. Ameline, 409 F.3d 1073, 1084-85 (9th Cir. 2005) (en banc), for the limited purpose of allowing this Court to address the issue of whether it would have imposed a materially different sentence had it known that the Sentencing Guidelines were merely advisory, following the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005). The Ninth Circuit's opinion affirming the Judgment and Sentence is reported at United States v. George, 420 F.3d 991, 1001-02 (9th Cir. 2005). On November 3, 2005, Mr. George filed a Petition for Rehearing with the Ninth Circuit, which was denied on January 10, 2006, with the corresponding Judgment and Mandate issuing on January 24, 2006.

Pursuant to the Ninth Circuit's remand order, on April 12, 2006, this Court held a hearing on the limited issue raised in Ameline, to wit: whether this Court would have imposed the same sentence had it known that the U.S. Sentencing Guidelines were merely advisory. At the conclusion of the hearing, the Court entered an oral Order imposing the same sentence on Mr. George that it had previously imposed. On April 21, 2006, Mr. George timely appealed this Court's oral Order to the Ninth Circuit.

On March 30, 2007, applying the holding in United States v. Combs, 470 F.3d 1294 (9th Cir. 2006)(appellate review following an Ameline remand is limited to determination of whether "district court properly understood the full scope of its discretion in a post-Booker world."), the Ninth Circuit affirmed this Court's decision to retain the sentence originally imposed prior to the Supreme Court's holding in Booker. Though not selected for publication, the Ninth Circuit's opinion is available at United States v. George, 226 Fed. Appx. 771 (No. 06-10275). Mr. George filed a Petition for Rehearing or Rehearing En Banc, which was denied by the Ninth Circuit on July 2, 2007. On October 1, 2007, Mr. George filed a Petition for Writ of Certiorari with the United States Supreme Court, which was denied on February 19, 2008.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1    Throughout the pendency of his trial and all post-conviction proceedings referenced

2  above, Mr. George has remained free on an unsecured personal recognizance bond. Mr. George

3  has complied with all court orders and the conditions of his release and has appeared at all

4  hearings in this matter. As noted in response to Inquiry # 1, *supra*, Mr. George is scheduled to

5  voluntarily surrender on Monday, May 5, 2008, pursuant to this Court's April 23, 2008,

6  Amended Order for Voluntary Surrender. The Court has recommended in its Amended

7  Judgment entered September 4, 2007, that Mr. George be designated to serve his term of

8  incarceration in the Lompoc Camp. Mr. George has not yet received formal notification from

9  the Bureau of Prisons that he has been designated to any facility, though he has received

10  informal notification that he has been designated to the Federal Medical Center Devens, located

11  near Boston, Massachusetts. In light of the financial and logistical burden that would be

12  imposed upon Mr. George and his family by requiring him to voluntarily surrender and

13  thereafter serve his sentence in Massachusetts, he has requested that the BOP reconsider this

14  designation and designate him to the Lompoc Camp in California.

15    9.    The concise ground on which Mr. George bases his allegation that the sentence
16         imposed against him was invalid:

17    Mr. George did not enjoy the effective assistance of counsel at trial, during sentencing or

18  on his first appeal, as guaranteed by the Sixth Amendment to the United States Constitution.

19  The performance of trial counsel, Topel & Goodman,[1] fell below that of a reasonable attorney

20  when it failed to conduct a pretrial investigation into evidence supporting the defense or to

21  present it at trial. This prejudiced Mr. George in that, but for counsel's unprofessional errors –

22  had the evidence been investigated and presented at trial – there is a reasonable probability that

23  Mr. George would have been acquitted. Additional detailed discussion addressing this inquiry

24  is contained in the Memorandum of Points and Authorities, *infra*.

25

26  [1] Mr. George retained the law firm of Topel & Goodman to represent him in the trial of this
    criminal matter. The attorneys who worked directly on Mr. George's trial, sentencing and first
27  appeal included Marcus S. Topel and Daniel F. Cook. For ease of reference, they are referred to
    collectively as "Topel & Goodman."

28

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

10.     The concise facts which support the grounds set out in inquiry # 9, *supra*:

Topel & Goodman, failed to conduct a pretrial investigation of facts and evidence that, if uncovered and presented at trial, would likely have resulted in Mr. George's acquittal by the jury. In particular, Topel & Goodman performed deficiently when it failed to interview witnesses identified by the defendant as supportive of the defense to be presented at trial, other similarly supportive witnesses of whom it should have been aware from the government's evidence and through discussions with Mr. George, and those whom it might easily have found had it conducted a reasonable investigation. Having failed to conduct a reasonable pretrial investigation, Topel & Goodman rendered itself unable to make reasonable strategic decisions necessary for trial or to present critical evidence in Mr. George's defense going to the very elements of the charges against him and his credibility, which, if presented, was likely to have resulted in Mr. George's acquittal. The failure to conduct a reasonable pre- and post-trial investigation also rendered Topel & Goodman unable to present critical evidence as to tax loss during trial and sentencing. The prejudice occasioned upon Mr. George by the ineffective assistance of his counsel continued in the first appeal of his Judgment and Sentence where Topel & Goodman's failure to conduct a pretrial investigation precluded it from successfully refuting the government's unsupported and unwarranted allegations that Mr. George was untruthful at trial. More detailed facts supporting Mr. George's allegations are contained in the Memorandum of Points and Authorities, *infra*.

11.     Has Mr. George previously filed habeas corpus motions under 28 U.S.C. § 2255, or any other applications, petitions or motions with respect to this conviction:

Other than the legal filings submitted in conjunction with the various District, Appellate and Supreme Court proceedings set forth in response to Inquiry # 8, *supra*, Mr. George has not previously filed any other motions (habeas or otherwise), applications or petitions with respect to his conviction.

12.     If the answer to Inquiry # 11 was yes, provide the specific nature of any such motions, applications or petitions, the names and locations of the courts in which they were filed, the dispositions thereof and dates of entry, and citations to any written opinions related thereto:

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

Not applicable.

13.    Has any ground set forth in Inquiry # 9, *supra*, been previously presented to this or any other federal court by way of petition for habeas corpus, motion under 28 U.S.C. § 2255, or any other petition, motion or application:

On March 28, 2008, Mr. George filed an *Ex parte* Motion for Stay of Surrender Pending Hearing of Habeas Corpus Relief (28 U.S.C. § 2255) with this Court wherein he preliminarily discussed the general bases and legal arguments supporting his request for relief contained in this Motion. At a hearing on his Motion for Stay of Surrender on April 9, 2008, this Court made no substantive rulings with respect to the merits of Mr. George's allegations herein or the supporting evidence. RT 04/09/08.

///

14.    If Mr. George answered "yes" to inquiry # 13, *supra*, identify the grounds previously presented and the proceedings in which each ground was raised:

Please see Mr. George's response to Inquiry # 13, *supra*.

15.    Was Mr. George represented by an attorney at any time during the course of:

| | | |
|---|---|---|
| (a) | Arraignment and plea? | Y |
| (b) | Trial, if any? | Y |
| (c) | Sentencing? | Y |
| (d) | Appeal, if any, from judgment and sentence ? | Y |
| (e) | Preparation, presentation or consideration of any petitions, motions or applications with respect to conviction? | Y |

16.    If Mr. George answered "yes" to one or more parts of inquiry # 15, *supra*, list the name and address of each attorney who represented you:

(a)    At arraignment and entry of plea:

John M. Youngquist, Esq.
Former address:    650 California Street, 25th Floor
San Francisco, California 94108
Current address:    201 Mission Street, Suite 2270
San Francisco, California 94105-1839

(b)    At trial:

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

Marcus S. Topel, Esq.
Daniel F. Cook, Esq.
Former address:        Topel & Goodman
                       832 Sansome Street, 4th Floor
                       San Francisco, California 94111
Current address:       Kasowitz, Benson, Torres, and Friedman
                       101 California Street, Suite 2050
                       San Francisco, California 94111

(c)    At sentencing:

Marcus S. Topel, Esq.
Daniel F. Cook, Esq.
See addresses listed in response to Inquiry # 16.b., *supra.*

(d)    During the First Appeal and Petition for Rehearing:

Marcus S. Topel, Esq. (Appeal)
Daniel F. Cook, Esq. (Appeal)
See addresses listed in response to Inquiry # 16.b., *supra.*
Gail Ivins, Esq. (Petition for Rehearing)
P.O. Box 9647
Glendale, California 91226

Karen Landau, Esq. (Petition for Rehearing)
2626 Harrison Street
Oakland, California 94612

(e)    During Remand Proceedings and Second Appeal:
Richard J. Sideman, Esq.
Steven M. Katz, Esq.
Emily J. Kingston, Esq.
Sideman & Bancroft LLP
One Embarcadero Center, 8th Floor
San Francisco, California 94111

(f)    During Petition for Writ of Certiorari:
Kathleen M. Sullivan, Esq.
Elizabeth B. Wydra, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065

Richard J. Sideman, Esq.
Steven M. Katz, Esq.
Emily J. Kingston, Esq.
Sideman & Bancroft LLP
See address listed in response to Inquiry # 16.e., *supra.*

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

(g)    During Filing of Motions, Petitions, Applications re: Conviction:
Richard J. Sideman
Steven M. Katz
Emily J. Kingston
Sideman & Bancroft LLP
See address listed in response to Inquiry # 16.e., *supra*.

/ / /

/ / /

/ / /

/ / /

/ / /

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    STATEMENT OF FACTS AND PROCEDURAL HISTORY[2]

During 1991, 1992 and 1993, Mr. George was a court appointed receiver for five broadcasting companies that were in financial distress, including Reno Broadcasting Company ("Reno"), Royal Broadcasting Company ("Royal"), Diamond Broadcasting Company ("Diamond"), Stardust Broadcasting Company ("Stardust") and JJN Corporation ("JJN"). RT 196-99; 441-43; 445; 691; 698-700; George Decl., ¶¶ 1, 2.  He was appointed by various Courts to oversee the operations of radio stations run by these broadcasting companies, and ultimately to facilitate their sales in order to satisfy unpaid creditors. Id. The receiverships were established through Court proceedings, at which various preliminary matters were considered, including the advances of receiver fees to be paid on interim bases to Mr. George pending approval of the final accountings by the Courts. RT 691-94, 762, 767-69, 772-73, 785-86; Trial Exhibit 117; George Decl., ¶ 2.  A typical example of a receivership order authorizing Mr. George's compensation can be found in the Diamond receivership Order, which stated:

Randolph E. George shall be reimbursed on a regular basis for his time at a rate

---

[2] RT = Trial Transcript, except where otherwise noted.  Additional relevant facts not stated herein are contained in the Discussion section, *infra*.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1
2
of $6,000 per month and for his out-of-pocket costs from the receivership estate, to be paid upon approval by the court upon an itemization of such time and costs.

3
4
*See e.g.,* Royal and Diamond Orders Appointing Receiver attached as Exhibits B, at ¶ 6 and C, at ¶ 5 respectively, to the Youngquist Decl.

5
6
7
8
During 1991 and 1992, Mr. George received advances of fees for his receiver activities related to Royal and Diamond. Youngquist Decl., ¶ 6; RT 679, 769, 771. However, approval for the payment of these fees was not sought from the Courts by Mr. George until 1993, when the affairs of the receiverships were winding down. RT 446-47, 677-78, 680, 767, 771-73.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
During the preparation of his personal returns for 1991 and 1992, Mr. George consulted with the accounting firm he had retained for the receiverships, Antonini Professional Corporation ("APC"). Antonini Decl., ¶¶ 17, 24; RT 767, 772-74; George Decl., ¶¶ 7, 8. He specifically inquired of APC's owner, Orlando J. Antonini, as to when he should report the receiver's fees on his personal returns, in light of the difference between the years he actually received the fees and when approval of the fees was sought from the Courts. Antonini Decl., ¶ 24; RT 773-74. Mr. George was aware that the receivership's corporate returns did not report a deduction for the receiver's fees until 1993, when final approval of the fees was sought by him in conjunction with the winding down of the receiverships. RT 771-72; Trial Exhibits A-C. Mr. Antonini advised Mr. George that his personal returns should consistently reflect his receiver's income in the same years in which the receiverships deducted the receiver's fees in the corporate tax returns, and that, for tax purposes, the receivership corporate tax returns deducted receiver's advances paid to Mr. George in 1993, when motions to approve the receivership accountings were ready to be filed with the Courts. Antonini Decl., ¶ 24; RT 773-74, 824-25; George Decl., ¶ 9. On the basis of this advice, from which he understood that the receiver's fees he received in 1991 and 1992 were simply advances pending his seeking final approval by the Courts, and not income to him in those years, Mr. George did not report such fees on his 1991 and 1992 returns. RT 677-78, 680, 779.

27
28
Mr. George's 1991 and 1992 returns were selected for civil audit by the IRS and were ultimately consolidated with an audit of his 1994 return on June 26, 1996. Youngquist, ¶ 2; RT

9
Case No. CR-01-0326 MMC

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1   305. While Mr. George initially engaged Mr. Antonini to assist him in this audit (*see* RT 306;

2   Trial Exhibit 15A), he ultimately engaged John M. Youngquist, a tax attorney, to represent him

3   in the course of the audit. Youngquist Decl., ¶ 2; RT 329. The issue of whether Mr. George was

4   obliged to report the receiver's fees on his 1991 and 1992 returns when the fees were received,

5   or on a later year's return when he sought approval of such fees from the Courts, was a specific

6   question raised by the IRS Revenue Agent, Chu Pak, in the course of the audit. Youngquist

7   Decl., ¶ 6; RT 330. Mr. George informed Revenue Agent Pak that he did not report the

8   receiver's fees on his 1991 and 1992 returns because he understood that such fees were not

9   income to him until final approval of their payment was sought from the Courts. RT 330; *see*

10  *also c.f.,* Youngquist Decl., ¶ 9; Antonini Decl., ¶ 24.

11       At the time the audit was being conducted, Mr. George had not yet filed his 1993 return.

12  Youngquist Decl., ¶ 7; RT 684; George Decl., ¶ 30. On its original due date, April 15, 1994, the

13  records necessary to complete the return were in disarray and the return could not, therefore, be

14  accurately prepared. RT 683, 809; Antonini Decl., ¶ 23; George Decl., ¶¶ 15, 16, 21. As such,

15  Mr. George filed a request for extension to August 15, 1994, to file this return. Trial Ex. 1; RT

16  683; *see also* Exh. O to George Decl. Thereafter, Mr. George sought the assistance of an

17  accountant from APC, Lisa Lubag, to help him accumulate and organize the relevant records in

18  an effort to prepare an accurate 1993 return. RT 391-92, 816-17, 819; see also George Decl., ¶¶

19  16, 21; Lubag Decl., ¶¶ 4, 5; Antonini Decl., ¶¶ 23, 26.

20       During the audit, Revenue Agent Pak inquired about the non-filing of the 1993 return.

21  RT 684; George Decl., ¶ 30. Mr. George advised Revenue Agent Pak that the return was not yet

22  ready to be filed, describing the reasons for the delay and the efforts he was taking to have it

23  prepared, but indicated that the return would be filed when it was completed. RT 684. Revenue

24  Agent Pak advised that the return could be filed with him and granted Mr. George additional

25  time in which to file the return.[3] RT 685, 687; George Decl., ¶ 30. After receiving the request

26

27

28
[3] Revenue Agent Pak testified he did not provide a specific due date for the filing of the return.
(footnote continued)

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1  for the 1993 return, Mr. George consulted with Mr. Youngquist, who advised Mr. George that,

2  until the issue of the proper year for reporting the receiver's fees was finally decided by the IRS,

3  Mr. George should not file the 1993 return. Youngquist Decl., ¶ 8; RT 681-82, 685, 689, 816-

4  17, 819; George Decl., ¶ 31. Relying on this advice, Mr. George did not file his 1993 return

5  pending the conclusion of the audit. RT 681-82.

6      Prior to the expiration of the thirty day period, however, Revenue Agent Pak referred the

7  matter to the IRS Criminal Investigation Division for an investigation into whether Mr. George

8  willfully submitted false tax returns for taxable years 1991 and 1992, premised on the fact that

9  he did not report the receiver's fees he received from Royal and Diamond in those years as

10 income, and whether he willfully failed to file his return for taxable year 1993. RT 419, 685,

11 688-89; Trial Exh. F. During the pendency of the criminal investigation, Mr. Youngquist again

12 advised Mr. George not to file any unfiled tax returns until the criminal matter was resolved.

13 Youngquist Decl., ¶ 8, Exh. D; RT 689; George Decl., ¶ 32.

14     Mr. George was indicted by a federal grand jury on August 30, 2001, and charged with

15 two felony counts of willfully filing a false tax return for taxable years 1991 and 1992, in

16 violation of 26 U.S.C. § 7206(1), for his failure to declare as income all of his receivers' fees

17 received in those years, and one misdemeanor count of failing to file a tax return for taxable

18 year 1993, in violation of 26 U.S.C. § 7203. Docket Entry # 1. While Mr. Youngquist

19 represented Mr. George during his arraignment and entry of a not guilty plea, in November,

20 2001, Mr. George retained the services of Topel & Goodman, to defend him at trial. Youngquist

21 Decl., ¶¶ 2, 3; George Decl., ¶ 36.

22     Mr. Youngquist transferred to Topel & Goodman all of his files and documents

23 accumulated during the civil audit and criminal investigation, with a cover letter inviting Topel

24 & Goodman to call him to discuss the prior proceedings, the facts of the case and possible

25 defenses. Youngquist Decl., ¶ 3, and Exh. A. Topel & Goodman thereafter never contacted Mr.

26

27 RT 846. Mr. George and Mr. Youngquist, however, recall that Revenue Agent Pak granted 30
   days in which to submit the return to him. RT 685; Youngquist Decl., ¶ 7; George Decl., ¶ 30.

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1  Youngquist regarding this matter. Id., ¶¶ 3-5, 36, 37.

2       In the time leading up to trial, Mr. George, who was then living in Massachusetts, either
3  met or conferred by telephone with Topel & Goodman on numerous occasions regarding the
4  facts of his case, available documentary and testimonial evidence, and his defenses to the
5  charges leveled against him. George Decl., ¶¶ 39-45. Mr. George described in detail his work as
6  a receiver and identified the many people who assisted him in or were related to this work who
7  might have relevant information or evidence to provide, including, *inter alia*, people at APC
8  who provided bookkeeping, accounting and tax services to the receiverships and to Mr. George,
9  in-house bookkeepers for the receiverships, an attorney who assisted Mr. George as receiver in
10  legally establishing and ultimately closing out the receiverships with the Courts, and individuals
11  and attorneys involved with motions to the Courts to deny Mr. George his receiver's fees. Id.,
12  ¶¶ 39-45. He also described the work of and information compiled by his former counsel, Mr.
13  Youngquist, during the course of the civil audit and criminal investigation. Id., ¶ 45.

14       Regarding the specific issues related to his 1991 and 1992 returns, Mr. George in
15  particular identified, among others at APC, Mr. Antonini, and advised Topel & Goodman that
16  he had relied on Mr. Antonini's and APC's advice with respect to the timing of the reporting of
17  his receiver's fees. Id.; *see also* Antonini Decl., ¶¶ 17, 24. As to the issues related to the 1993
18  return, Mr. George told Topel & Goodman that on the date the return was due, his records were
19  in disarray, that he had hired Ms. Lubag to assist him in organizing his records in an effort to
20  file an accurate return, and that when the audit commenced, Mr. Youngquist specifically
21  advised that he not file his 1993 return until the issue of the timing of the reporting of receiver's
22  fees was finally determined by the IRS. RT 681-82, 685, 689, 816-17, 819; Youngquist Decl., ¶
23  8; Lubag Decl., ¶ 4, 5; George Decl., ¶ 45.

24       As to the issue of tax loss, Mr. George advised Topel & Goodman that he had engaged
25  Morris Robinson, an attorney and CPA to evaluate Mr. George's tax liability for the calendar
26  years 1991, 1992 and 1993. George Decl., ¶ 45; Robinson Decl., ¶ 7. Mr. Robinson had
27  determined that the total tax liability for the three years, assuming a reallocation of the
28  receiver's fees to 1991 and 1992, was $38,165 (as compared to the government's pre-trial and

12                                                                    **Case No. CR-01-0326 MMC**

§ 2255 Motion to Vacate, Set Aside or Correct Sentence

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1  trial computation of loss of $54,634.16, *see* RT 653). Robinson Decl., ¶ 8, Exh. A.  Mr. George

2  provided Topel & Goodman with Mr. Robinson's written analysis. George Decl., ¶ 45.

3  Topel & Goodman neither investigated any of the information provided by Mr. George

4  nor contacted any of the individuals identified by him prior to trial to interview them as to their

5  knowledge of the facts, to inquire as to what testimony or documentary evidence they might be

6  able to provide at trial in Mr. George's defense, or to prepare them for trial. Antonini Decl., ¶ 8,

7  27; George Decl., ¶ 46; Lubag Decl., ¶ 6; Metzler Decl., ¶ 7; Newman Decl., ¶ 9; Oliver Decl., ¶

8  28, 33; Robinson Decl., ¶ 11; Shemaria Decl., ¶ 16; Svendsen Decl, ¶ 15; Youngquist Decl., ¶ 3-

9  5, 36, 37.  Nor were any of these witnesses subpoenaed by Topel & Goodman for the purposes

10  of testifying at trial.[4] George Decl., ¶ 46.

11  During trial, Mr. George testified that, in reliance on the advice provided to him by APC

12  and Mr. Antonini, he did not report the receiver's fees he actually received in 1991 and 1992 as

13  income on his personal 1991 and 1992 returns. RT 772-74.  He testified that had been told that

14  he should report such income in a manner consistent with the receiverships' corporate returns;

15  because the corporate returns did not report the receiver's fees as a deduction on the 1991 and

16  1992 returns, neither should his personal returns report the fees as income to him in these years.

17  Id.  He further testified that, in reliance on the advice of his then-counsel, Mr. Youngquist, he

18  did not file his 1993 return. RT 681-82, 685, 689, 816-17, 819; *see also* Youngquist Decl., ¶ 8.

19  The only evidence in Mr. George's defense offered at trial by Topel & Goodman as to

20  these issues was the testimony of Mr. George himself.  No evidence corroborating Mr. George's

21  anticipated testimony at trial was sought by Topel & Goodman through pretrial investigation.

22  Nor did Topel & Goodman garner or attempt to garner any mitigating evidence through pretrial

23  investigation that could have been used to successfully cross-examine the government's

24

25

26  [4] Topel & Goodman did, two days into trial, send a subpoena to Orlando Antonini requesting
    the production of documents in APC's possession related to the receiverships.  At the time, Mr.

27  Antonini did not recall having any documents and, as a result, did not make a production.
    Antonini Decl., ¶ 9.

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1 | witnesses, including its expert witness on the issue of tax loss. No other witnesses were called
2 | by his defense team at trial, and no corroborating documents were offered into evidence. As a
3 | result of this failure to put on even a shred of corroborating evidence in Mr. George's defense,
4 | or to challenge in any meaningful way the evidence presented by the prosecution, on November
5 | 13, 2002, after only an hour's deliberation, the jury convicted Mr. George of all three counts of
6 | the indictment. CR 41; RT 11/13/02.

7 | Following the trial, for the purposes of sentencing, Mr. George hired a second forensic
8 | accountant, Sandy Stadtler, and a tax attorney, Randall Dick, to provide detailed computations as
9 | to tax loss. George Decl., ¶ 56; Stadtler Decl., ¶ 4; Dick Decl., ¶ 3. Their analyses concluded that
10 | Mr. George's total tax liability for the years 1991 to 1994, including Mrs. George's assumed tax
11 | liabilities (as ruled appropriate by this Court), was $33,664; this compared with the prosecution's
12 | post-trial computation of tax loss of $128,528 and the Office of Probation's computation of tax
13 | loss of $149,685. Stadtler Decl., ¶ 7. Mr. George provided Stadtler's and Dick's written
14 | analyses to Topel & Goodman. George Decl., ¶ 56. While these individuals were utilized for a
15 | time by Topel & Goodman leading up to sentencing in an effort to challenge certain elements of
16 | the government's tax loss computations, Topel & Goodman never requested an evidentiary
17 | hearing as to tax loss at which Mr. George's experts' analyses could be presented to refute the
18 | government's computations. Stadtler Decl., ¶¶ 5, 6, 32, 33; Dick Decl., ¶¶ 12 – 14.

19 | After a post-trial hearing on legal issues related to relevant conduct, where the
20 | government's tax loss computations went entirely unchallenged by Mr. George's defense team –
21 | it having failed to request an evidentiary hearing to substantiate a lower number – Mr. George
22 | was left with the choice of either (1) attempting to negotiate a lower tax loss number starting
23 | from the government's inflated computations, or (2) attending a sentencing hearing at which the
24 | sole evidence of tax loss would be comprised of the government's computations. Mr. George
25 | made the only practical choice under the circumstances – the entry into a Stipulation as to Tax
26 | Loss that reflected a tax loss range of $70,000 - $120,000 (just $8,528 less than the government
27 |
28 |

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1  asserted was due).[5]  Based on this Stipulation, the Court sentenced Mr. George on May 19,

2  2004, to fifteen months' imprisonment for the false return counts, a concurrent term of twelve

3  months' imprisonment on the failure to file count, a $20,000 fine, a $125 special assessment,

4  and $70,000 in restitution.[6]  CR 96, 99; RT 5/19/04, pp. 29-32.

5         On May 26, 2004, Mr. George appealed to the Ninth Circuit from the Judgment and

6  Sentence entered against him.  Having failed to present any evidence to corroborate Mr.

7  George's testimony at trial, or to refute the government's tax loss computations at either trial or

8  sentencing, Topel & Goodman was unable to contest the government's repeated allegations on

9  appeal that Mr. George was untruthful at trial.  On August 23, 2005, the Ninth Circuit affirmed

10  Mr. George's conviction, finding that he lacked credibility, and after denying Mr. George's

11  Petition for Rehearing on January 10, 2006, remanded the case to this Court pursuant to the

12  holding in United States v. Ameline, 409 F.3d 1073, 1084-85 (9th Cir. 2005) (en banc), to

13  determine whether it would have imposed a materially different sentence had it known that the

14  Sentencing Guidelines were merely advisory.

15         The remand and subsequent appellate proceedings are well known to this Court and

16  irrelevant to the issues herein and, therefore, will not be reiterated here.  Details of these

17  proceedings are contained in Mr. George's responses to the Specific § 2255 Inquiries, *supra.*

18  **II.    DISCUSSION**

19         **A.    Introduction and Summary of Arguments**

20         Mr. George did not enjoy the effective assistance of counsel at trial, as guaranteed by the

21  Sixth Amendment to the United States Constitution.  Trial counsel's performance fell well

22  _____

23  [5] While there is no doubt that Mr. George received a "benefit" from the entry of this Stipulation,
    as the tax loss range agreed to reduced the offense level by one from 15 to 14, had Topel &
24  Goodman presented the critical evidence contained in the tax loss computations of Stadtler and
    Dick, Mr. George would have received an offense level of only 12 under the U.S. Sentencing
25  Guidelines applicable to the 1991, 1992 and 1993 charges, carrying with it a much lower
26  possible sentence. *See* Discussion at § II.B.2.b., *infra.*

27  [6] Since being sentenced, Mr. George has fully paid the fine, restitution and special assessment.
    CR 120, 121, 122.

28

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1  below that of a reasonable attorney when it failed to conduct an investigation into evidence

2  supporting Mr. George's defense and, as a result, failed to present critical evidence at trial that

3  would have established Mr. George's innocence of the crimes charged. In particular, Topel &

4  Goodman performed deficiently when it failed to interview witnesses identified by Mr. George

5  as supportive of the defense to be presented at trial, other similarly supportive witnesses of

6  whom it should have been aware from the government's evidence and through discussions with

7  Mr. George, and those whom it might easily have found had it conducted a reasonable or,

8  indeed any, pretrial investigation. Had counsel interviewed these witnesses, it would have

9  learned that they possessed testimony and documentary evidence that would have corroborated

10 Mr. George's defense presented solely through his own testimony at trial. Trial counsel's

11 performance during the sentencing phase also fell below that of a reasonable attorney when it

12 failed to request an evidentiary hearing to present expert witness testimony and documentary

13 evidence supporting a lower tax loss computation than that posited by the government.

14     Having failed to conduct a reasonable investigation both pre-trial and pre-sentencing,

15 Topel & Goodman rendered itself unable to make responsible strategic decisions necessary for

16 trial or to present critical evidence in Mr. George's defense going to the very elements of the

17 charges against him, which, if presented, was likely to have resulted in Mr. George's acquittal.

18 Its failure to investigate also rendered it unable to present critical evidence and arguments

19 during the sentencing phase that resulted in a higher sentence than was warranted under the

20 facts. Counsel's deficient performance fell below the standard of a reasonable attorney and

21 prejudiced Mr. George, depriving him of a fair trial and a fair sentence.

22     **B.    Legal Analysis**

23          **1.    Legal Standards Regarding Ineffective Assistance of Counsel Claims**

24     The Sixth Amendment to the United States Constitution guarantees a fair trial by

25 providing to a defendant, among other things, the assistance of counsel for his defense. "The

26 right to counsel plays a crucial role in the adversarial system embodied in the Sixth

27 Amendment, since access to counsel's skill and knowledge is necessary to accord defendants

28 'ample opportunity to meet the case of the prosecution' to which they are entitled." Strickland v.

§ 2255 Motion to Vacate, Set Aside or Correct Sentence

1    Washington, 466 U.S. 668, 685 (1984), *quoting* Adams v. United States ex rel. McCann, 317

2    U.S. 269, 275 (1942).  As recognized by the United States Supreme Court, "the right to counsel

3    is the right to the effective assistance of counsel." Id., at 686, *quoting* McMann v. Richardson,

4    397 U.S. 759, 771 n. 14 (1970).

5        In order to prevail on an ineffective assistance of counsel claim, a defendant must show

6    that: (1) His counsel's representation fell below an objective standard of reasonableness; and (2)

7    he was prejudiced by his counsel's deficient performance. Strickland, 466 U.S. at 687-89;

8    United States v. Swanson, 943 F.2d 165, 168 (9th Cir. 1991).  "The benchmark for judging any

9    claim of ineffectiveness must be whether counsel's conduct so undermined the proper

10   functioning of the adversarial process that the trial cannot be relied on as having produced a just

11   result." Strickland, 466 U.S. at 686.

12       The proper measure of an attorney's performance is reasonableness under prevailing

13   professional norms. Rompilla v. Beard, 545 U.S. 374, 387 (2005); Wiggins v. Smith, 539 U.S.

14   510, 521 (2003)(where a failure to investigate thoroughly stems from inattention and not

15   strategic judgment, counsel's conduct is unreasonable).  The ABA Standards on Criminal

16   Justice require counsel to act with reasonable diligence in representing a client. *See* ABA

17   Standards on Criminal Justice, The Defense Function, Standard 4-1.3  Defense counsel has a

18   duty to conduct a reasonable investigation or, based on adequate investigation, to decide that

19   further investigation is unnecessary. Reynoso v. Giurbino, 462 F.3d 1099, 1113 (9th Cir 2005).

20   In assessing the reasonableness of counsel's investigation, the Court should include a "context-

21   dependent consideration of the challenged conduct as seen 'from counsel's perspective at the

22   time'" and must attempt to "eliminate the distorting effects of hindsight." Wiggins, 539 U.S. at

23   523, *quoting* Strickland, 466 U.S. at 689.

24       "Strategic choices made after thorough investigation of law and facts relevant to

25   plausible options are virtually unchallengeable; [however,] strategic choices made after less than

26   complete investigation are reasonable precisely to the extent that reasonable professional

27   judgments support the limitations on investigation." Strickland, 466 U.S. at 690-91.  A

28   reasonable investigation includes interviewing witnesses identified by the defendant as

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1   supportive of the defense. Lord v. Wood, 184 F.3d 1083, 1093-94 (9th Cir. 1999). While

2   counsel's tactical decisions are entitled to deference, a decision cannot be deemed tactical when

3   it is made without "first procuring the information necessary to make such a decision." Id.;

4   Brown v. Myers, 137 F.3d 1154, 1158 (9th Cir. 1998). A tactical decision not to introduce

5   exculpatory evidence that is based on a cursory interview or investigation is not entitled to

6   deference. Lord, 184 F.3d at 1095; Hart v. Gomez, 174 F.3d 1067, 1070-71 (9th Cir. 1999).

7   Numerous cases have held that the failure to interview potential defense witnesses

8   constitutes ineffective assistance of counsel. See e.g., Riley v. Payne, 352 F.3d 1313, 1318-19

9   (9th Cir. 2003)(counsel's failure to interview potentially corroborating witness fell below the

10  standard of a reasonable professional); Rios v. Rocha, 299 F.3d 796, 805 (9th Cir. 2002)(failure

11  to interview potential eye-witnesses was ineffective assistance of counsel); Silva v. Woodford,

12  279 F.3d 825, 838-39 (9th Cir. 2000)(failure to investigate and present potentially compelling

13  mitigating evidence to the jury during the penalty phase was ineffective assistance of counsel);

14  Brown, 137 F.3d at 1157-58 (failure to interview alibi witnesses was ineffective assistance of

15  counsel); Bryant v. Scott, 28 F.3d 1411, 1417-18 (5th Cir. 1994)(counsel's failure to interview

16  witnesses, whose names were provided by defendant only 72 hours before trial, fell below

17  standard of reasonableness). "A lawyer who fails adequately to investigate, and to introduce

18  into evidence, information that demonstrates his client's factual innocence, or that raises

19  sufficient doubts as to that question to undermine confidence in the verdict, renders deficient

20  performance." Lord, 184 F.3d at 1093.

21  A tactical decision requires counsel to make a knowing and reasoned choice between

22  alternatives. See Bloom v. Calderon, 132 F.3d 1267, 1277 (9th Cir. 1997). As noted by the ABA

23  in its Amicus Curiae brief filed with the United States Supreme Court in the case of Wiggins,

24  539 U.S. 510:

25      Lawyers ... cannot make key strategic decisions ... that are either constitutionally
        or ethically sufficient without conducting a reasonably complete and thorough
26      investigation.... Decision-makers cannot act reasonably if they lack an informed
        basis for choosing one defense over another, one expert over none, or the
27      presentation of some facts over others.

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

> The scope of pre-trial investigation is necessarily independent from the scope of trial presentation; a decision not to present evidence requires knowledge of that evidence and its implications just as does a decision to present the evidence. By conducting a complete and thorough pre-trial investigation into mitigation evidence, counsel protects the adversarial nature of the justice system and helps ensure that an individualized determination ... will be made for the defendant.

*Amicus Curiae* of the American Bar Association in support of the petitioner.

An error by counsel, even if professionally unreasonable, however, does not warrant setting aside the judgment of a criminal proceeding, unless the deficiencies in counsel's performance were prejudicial to the defense. Strickland, 466 U.S. at 691-92. Prejudice from a counsel's deficient performance is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 692; United States v. Mannino, 212 F.3d 835, 844-45 (3d Cir. 2000). In assessing prejudice, the Court must "reweigh the evidence in aggravation against the totality of the available mitigating evidence." Wiggins, 539 U.S. at 534. "An evidentiary hearing is required if a defendant's allegations are based on facts outside the record, unless the motion, files and record conclusively show that the petitioner is entitled to no relief." Doganiere v. United States, 914 F.2d 165, 168 (9th Cir. 1990), *cert. denied,* 499 U.S. 940 (1991); Shah v. United States, 878 F.2d 1156, 1158 (9th Cir.), *cert. denied,* 493 U.S. 869 (1989).

## 2. Topel & Goodman Rendered Constitutionally Defective Assistance of Counsel at Trial, During the Sentencing Phase and on Appeal

Topel & Goodman's errors individually and collectively denied Mr. George a fair trial, his right to present a defense, the effective assistance of trial and appellate counsel, and a reliable sentencing hearing as guaranteed by the Sixth Amendment to the United States Constitution. Mr. George was prejudiced in a number of ways, but at the core, by a trial in which the jurors heard a virtually unrefuted, and a certainly unbalanced case, and one in which they never heard testimony from witnesses in Mr. George's defense, powerful and vivid corroborating testimony that would have compelled the jury to find Mr. George innocent of the crimes charged.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1  The prejudice occasioned upon Mr. George by his counsels' failure to reasonably

2  investigate the facts and present mitigating evidence to corroborate his testimony at trial, is

3  summed up clearly in the following statement by this Court at the remand hearing:

> Everyone should be entitled to a trial and is entitled to a trial and shouldn't be
> punished for asking for one, but it does appear to this court, and I would be
> prepared to find by any standard that's required, including beyond a reasonable
> doubt, that the defendant was not truthful on the stand ....

7  RT 4/12/06, pp. 28-30. The evidence and testimony presented in this motion, which could

8  easily have been investigated and presented by Topel & Goodman, demonstrate beyond a

9  reasonable doubt that Mr. George was truthful at trial and, thus, innocent of the crimes charged.[7]

10  Had the jury and this Court had the benefit of hearing and reviewing this evidence, there is a

11  reasonable probability that Mr. George would have been acquitted.

**(a)** **Topel & Goodman Rendered Constitutionally Deficient
Assistance of Counsel at Trial by Failing to Conduct a Pretrial
Investigation and Failing to Present Corroborating Evidence**

15  There exists no record, either by way of memoranda, notes, emails, faxes, documents,

16  subpoenas, testimony, or otherwise, that Topel & Goodman made an investigation of any kind

17  prior to the commencement of trial.[8] George Decl., ¶ 46. Indeed, during a hearing on Mr.

18  George's Motion for New Trial, this Court chastised Topel & Goodman for failing to use

19  sufficient diligence in subpoenaing documents prior to trial:

> ... on the question of diligence, there is no question that the defense pulled out
> all the stops at one point in trying to obtain the evidence which they ultimately
> obtained. The question the Court has is why they did so at the point that they
> did as opposed to earlier, [rather than during trial] ... and why they didn't ...
> subpoena those earlier and/or subpoena records from, if possible, the attorneys

---

[7] Notably, George is not required to establish these facts beyond a reasonable doubt or even by a preponderance of the evidence. Rather, he need only establish that there is a reasonable probability that the outcome would have been different. Strickland, 466 U.S. at 692.

[8] Mr. George's trial counsel did order IRS transcripts for taxable years 1991 through 1994, that listed various information the IRS has on record, such as 1099s, 1098s, tax assessments, dates tax returns were filed, and the like. *See also* fn. 4, *supra.*

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1    from the receivership .... I am going to find in the first instance that [they] did
2    not use sufficient diligence to obtain the documents....

3    RT 12/03/03, pp. 20-22. This is but one example of Topel & Goodman's lack of reasonable due
4    diligence in this case.

5        The receiverships to which Mr. George was appointed were complex, requiring the use
6    of numerous attorneys, accountants, consultants, bankers and other professionals. George Decl.,
7    ¶ 1. Mr. George also used CPAs, bookkeepers, attorneys, bankers and other experts in his own
8    business and personal activities. Id. These professionals had varying specific knowledge of Mr.
9    George's activities as receiver, his state of mind, his numerous filings with various receivership
10   courts, the Internal Revenue Service, and more. Id., ¶ 45.

11       In the year leading up to trial, Mr. George informed Topel & Goodman about his use of
12   these professionals and specifically identified them and the purposes for which their testimony
13   might be useful at trial. George Decl., ¶¶ 39-45. Yet, despite this information, not one of these
14   professionals, nor anyone else to Mr. George's knowledge, was ever contacted prior to trial by
15   Topel & Goodman, let alone interviewed or investigated, as to what personal knowledge he or
16   she possessed as to any relevant facts that could be presented at trial, nor were any of the
17   documents in his or her possession sought, summonsed or presented at trial or during
18   sentencing. *See* Antonini Decl., ¶¶ 8, 27; George Decl., ¶ 46; Lubag Decl., ¶ 6; Metzler Decl., ¶
19   7; Newman Decl., ¶ 9; Oliver Decl., ¶¶ 28, 33; Robinson Decl., ¶ 11; Shemaria Decl. ¶ 16;
20   Svendson Decl., ¶ 15; Youngquist Decl. ¶ 3-5, 36, 37. In the face of significant evidence that
21   would have overwhelmingly corroborated Mr. George's testimony at trial on critical issues
22   going to his guilt or innocence of the crimes charged, Topel & Goodman's review was limited
23   exclusively to evidence provided by the prosecution. Even then, however, there was no
24   investigation by Topel & Goodman into the government's claims or efforts made to refute them.

25       Each of the persons listed above had specific knowledge of facts, which, had their
26   testimony been introduced at trial or sentencing, would have supported the testimony of Mr.
27   George, who the Ninth Circuit in the initial appeal noted suffered from an "apparent credibility
28   problem." United States v. George, 420 F.3d 991, 1001-02 (9th Cir. 2006). Yet, bafflingly,

21                                                      Case No. CR-01-0326 MMC
§ 2255 Motion to Vacate, Set Aside or Correct Sentence

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1  none of these witnesses was called by Topel & Goodman.

2      The indictment charged Mr. George with two counts of filing false returns for 1991 and
3  1992, and one count of failing to file a return for 1993. These offenses are specific intent crimes
4  that require the government to prove that the defendant acted willfully. *See* 26 U.S.C. §§
5  7206(1), 7203. The indictment arose out of a dispute between Mr. George and the IRS as to
6  when his receiver's income should have been reported on his personal income tax returns.
7  Youngquist Decl., ¶¶ 6-8; George Decl., ¶ 3. The only evidence offered at trial in Mr. George's
8  defense as to the issue of intent on each of the charges was the testimony of Mr. George himself.

9      As to the 1991 and 1992 returns, Mr. George testified that, in reliance on the advice
10  provided to him by APC and Mr. Antonini, he did not report the receiver's fees he received in
11  1991 and 1992 as income on his personal 1991 and 1992 returns; this advice, as Mr. Oliver
12  states in his declaration, was premised on research conducted by Mr. Oliver. RT 772-74; Oliver
13  Decl., ¶¶ 22, 26, 27. Rather, Mr. George had been told that he should report such income in a
14  manner consistent with the receiverships' corporate returns; because the receiverships' returns
15  did not report the receiver's fees as a deduction on the 1991 and 1992 returns, neither should his
16  personal returns for these years report the fees as income. RT 824-25. As to the 1993 return,
17  Mr. George testified that when the return was due, his records were in disarray, necessitating his
18  hiring of Ms. Lubag to assist him in organizing the records in an effort to prepare an accurate
19  return. RT 683, 685, 689, 809, 816-17, 819. He further testified that, in reliance on the advice
20  of his then-counsel, Mr. Youngquist, he did not thereafter file his 1993 return while the IRS was
21  conducting a civil audit and the subsequent criminal investigation addressing the issue of the
22  timing of the reporting of the receiver's fees. RT 681-82, 685, 689, 816-17, 819.

23      Topel & Goodman called no other witnesses nor offered any documentary evidence to
24  bolster Mr. George's claims that his actions in not reporting the receiver income on his 1991 and
25  1992 returns and his failure to file his 1993 return were not willful. Had Topel & Goodman
26  done even a modicum of pretrial investigation, it would have garnered significant amounts of
27  highly corroborative evidence that could and should have been presented at trial.

28      For example, had Topel & Goodman investigated, they would have learned from Mr.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1  Youngquist that Mr. George believed "that the receiver's fees distributed to him would not be

2  deemed "paid" until their approval was sought by the Courts." *See* Youngquist Decl. at ¶ 9.

3  They would have further learned from Mr. Oliver, the head of APC's tax department, that "...

4  irrespective of the years in which the interim receiver's fees were advanced to Mr. George, APC

5  deducted such fees on the receiverships' corporate tax returns only on the 1993 final year's

6  returns... [when] Mr. George sought approval of the final accounting for the receiverships,

7  including his receiver's fees,... when the receiverships were completed and all corporate

8  operating activities had ended." *See* Oliver Decl., ¶ 22. They would have also learned that Mr.

9  Oliver conducted research into precisely this issue and that, based on his opinion formulated by

10  this research, APC believed that the receiverships' corporate tax returns should deduct

11  receivership advances to Mr. George in the year in which he sought approval of the final

12  receivership accountings with the Courts; because that occurred in 1993, the receiverships'

13  returns reported the deductions in that year. *See* Orlando Decl., ¶ 24. They would also have

14  learned the critical fact that APC advised Mr. George to report his receiver's income on his

15  personal returns in a manner consistent with the manner in which the receiverships' corporate

16  returns were prepared; because the receiverships' corporate returns did not report the receiver's

17  fees as deductions on their 1991 and 1992 returns, neither should Mr. George report it as income

18  in those years. Id.

19       As to the non-filing of the 1993 return, they would have learned from Ms. Lubag, an

20  accountant at APC, that, at the time the return was due, Mr. George's records were in shambles

21  and that he had hired her precisely for the purpose of organizing his records and preparing this

22  return. Lubag Decl., ¶ 5, Exh. A. They would have also learned from Mr. Youngquist that, when

23  the IRS was auditing Mr. George's returns for 1991 and 1992, Mr. Youngquist advised him not

24  to file the 1993 return until the IRS finally determined in which year the receiver's income

25  should be reported. Youngquist Decl., ¶ 8. They would also have learned that Mr. Youngquist

26  continued his advice to Mr. George's to not file his unfiled returns, including the 1996 and 1997

27  returns, pending the conclusion of the criminal investigation. Id.

28       Mr. George, as well as evidence produced by the government, directed Topel &

§ 2255 Motion to Vacate, Set Aside or Correct Sentence

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1  Goodman toward these individuals and the corroborating information they could provide. Yet,

2  Topel & Goodman never contacted any of these individuals to inquire into this critical evidence,

3  evidence that went to the very heart of the element of intent in the three charges against Mr.

4  George. Antonini Decl., ¶ 8, 27; Lubag Decl., ¶ 6; Oliver Decl., ¶ 28, 33; Youngquist Decl., ¶ 3-

5  5, 36, 37.

6

7                                  **(i)      1991 and 1992 Returns:**

8          The essential elements of filing a false tax return are that: (1) The Defendant filed a tax

9  return that he knew was false as to a material matter; (2) the return was signed under the

10  penalties of perjury; and (3) the defendant acted willfully. 26 U.S.C. § 7206(1); Ninth Circuit

11  Model Criminal Jury Instruction 9.37. In determining whether Mr. George was guilty of

12  willfully filing false tax returns for 1991 and 1992, the critical elements were falsity and

13  willfulness. "Good faith reliance on a qualified accountant has long been a defense to

14  willfulness...." *See* United States v. Bishop, 291 F.3d 1100, 1106 (9th Cir. 2002); United States

15  v. Claiborne, 765 F.2d 784, 798 (9th Cir. 1985), *abrogated on other grounds*, 487 U.S. 81

16  (1988). The government has the burden of negating a defendant's claim that he had a good faith

17  belief that he was not violating any provisions of the tax laws. Cheek v. United States, 498 U.S.

18  192, 202 (1991). Even if the advice a defendant received was wrong, if the defendant can

19  establish his good faith reliance on that advice, he will have established his defense. Id.

20

21         With Mr. George's uncorroborated testimony at trial, the prosecution was able to answer

22  this critical inquiry in the positive – that he willfully filed returns for 1991 and 1992 that he

23  knew to be false in their failure to report the receiver's fees he received in those years.

24  However, had Topel & Goodman conducted the reasonable investigation they were ethically

25  and constitutionally obligated to undertake, it would have learned and been able to present at

26  trial key evidence from various witnesses that, if presented, would have in all probability caused

27  the jury to have answered the critical inquiry in the negative – that Mr. George did not willfully

28

§ 2255 Motion to Vacate, Set Aside or Correct Sentence

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1  file returns for 1991 and 1992 that he knew to be false – and, therefore, find him not guilty of

2  the crimes charged. Topel & Goodman's failure to investigate and present this critical evidence

3  had the ultimate prejudicial effect – an unwarranted verdict of guilt.

4      Below is a recitation of the key pieces of corroborative evidence Topel & Goodman

5  would have learned and could have presented at trial had it conducted a reasonable

6  investigation, simply looked into its files for information already there, or referred to

7  information Mr. George and the government had provided with respect to the 1991 and 1992

8  returns prior to trial:

9                         **(b)    Orlando Antonini:**

10      Mr. Antonini was a CPA and the owner of APC, which had provided

11  bookkeeping and other accounting and tax assistance to the various receiverships for which Mr.

12  George was the court appointed receiver. Antonini Decl., ¶¶ 17, 24. Mr. George informed Topel

13  & Goodman prior to trial that he had sought and received advice from Mr. Antonini as to the

14  timing of the reporting of the receiver's fees he received in 1991 and 1992. George Decl., ¶ 45.

15  The following colloquy between Marcus S. Topel as questioner and Mr. George as witness

16  occurred at trial:

17      Q.    Okay. Did you have any discussions with your accountants concerning
       how the other side of the coin, how you should treat the receivership -- whether
18      you should treat the receivership fees that you received the same way?

19      A.    Yes, we did. And my accountant told me that there was really no
20      deference [sic]. You treat it the way the Court – .... It was said that I should treat
       it the same way as the corporate tax return should treat it and the way the court
21      instructed me to treat it.

22      Q.    And can you now tell us who it was, or which person, or persons gave
23      you that advice?

24      A.    It was the Antonini Professional Corporation.

25      Q.    Can you tell us who at the Antonini Professional Corporation it was who
26      gave you that advice?

27      A.    Orlando Antonini.

28  RT 773-74.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1    Mr. Antonini was listed as a potential defense witness by Topel & Goodman but,

2   curiously, it never contacted him prior to trial in order to ascertain what he could provide in Mr.

3   George's defense. *See* George Decl., ¶ 47.[9]    Rather, Mr. Antonini was called by the *prosecution*

4   for the limited purpose of testifying that he was not retained by George to prepare his 1991 and

5   1992 income tax returns. RT 285-88; Antonini Decl., ¶ 4.  Once Mr. Antonini was on the stand

6   as the prosecution's witness, Topel & Goodman failed to ask the simple question, "Did you

7   advise Mr. George as to how he should file his 1991 and 1992 personal income tax returns?"

8   This question was pivotal to Mr. George's defense; an affirmative answer from Mr. Antonini

9   would have established Mr. George's receipt of advice regarding the reporting position on his

10   1991 and 1992 returns, the very lynch pin to his good faith reliance defense.  In its opinion

11   rendered in Mr. George's first appeal, the Ninth Circuit recognized the pivotal nature of this

12   question, noting that Topel & Goodman failed to ask it:

13       Notably, defense counsel never asked Antonini whether he personally advised
         George to report the receiver fees on his personal returns in the year that the court
14       approved the final accounting of the receivership, as opposed to the year the fees
         were actually received. George was the sole witness who testified to that effect,
15       and the jury apparently found his testimony to be less than credible. Thus, we
         reject George's good faith defense.
16

17   *See* United States v. George, 420 F.3d 991, 1001-02 (9th Cir. 2006).

18       The failure to even ask this question was the direct result of Topel & Goodman's failure

19   to investigate or contact Mr. Antonini or anyone at APC in any way prior to trial.  One can only

20   surmise, then, that Topel & Goodman did not ask the question at trial because, having failed to

21   previously interview Mr. Antonini, they did not know what his answer to the question would be.

22

23   _____
[9] Further evidence that Topel & Goodman did not contact Mr. Antonini prior to trial is
24   contained in a Memorandum of Interview dated October 17, 2002, of Mr. Antonini by the IRS
     Criminal Investigation Division. *See* George Decl., ¶ 53, Exh. P. As reflected therein, as of
25   October 17, 2002, notably a date after the trial was originally scheduled to commence, and just
     two weeks prior to the actual trial, Mr. Antonini had not spoken to George's attorneys and even
26   inquired after their names and telephone numbers. Exh. P, ¶ 15. Maybe even more curious,
     given the close proximity of the upcoming trial date, in response to Mr. Antonini's request, the
27   IRS Special Agent told him that she did not have that information available. Id.

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1   As demonstrated by his declaration, however, Mr. Antonini's answer would have corroborated

2   Mr. George's testimony in this regard. Antonini Decl., ¶ 24. Specifically, had Topel &

3   Goodman asked Mr. Antonini if he had advised Mr. George regarding his 1991 and 1992

4   personal returns, Mr. Antonini would have responded, as he does in his Declaration, that he

5   "advised Mr. George that his personal tax returns should consistently reflect his receivership

6   income in the same years in which the receiverships deducted the receivership fees in the

7   corporate tax returns." Id.; *see also*, ¶ 7.

8   Topel & Goodman's failure to ask this pivotal question allowed the prosecution to argue

9   unfettered in its closing statements that,

> If Mr. Antonini had told Mr. George, "hey, the receivership fees aren't reportable until
> 1993," why didn't he testify to that? He didn't. He never told Mr. George that. He
> never told him that. He never told him. That was something that they came up with at
> the last minute to counter the fact that he did not report his return, as he said right at the
> beginning, he had a good faith belief he had to do....
>
> The bottom line is, that's the big lie. [George] never believed that. He never had an
> honest belief that he had to report his receivership fees when the accountings were
> approved by the court. He knew all along he had to report them when he received them.

16  RT 904. It further argued,

> Now, I sat here in the court, and you did, too. And I listened to Mr. Antonini's
> testimony, and the one thing I did not hear Mr. Antonini testify to, I did not hear him
> testify, "I told Randolph George to report his receivership fees in 1993." Curiously, they
> had him on the stand. That's the whole defense. We can get the explanation. "Do you
> remember, Mr. Antonini; remember, it was back in 1994, and I asked you, and you said
> you don't have to report them till 1993?" they didn't even ask him the question. They
> didn't ask him the question.
>
> Why not? If Mr. Antonini told him that, why don't they ask him? Because they knew
> Mr. Antonini did not tell him that. He never had any advice of counsel that he was to
> file those receivership fees in 1993, none whatsoever.

23  RT 938.

24  Later, Topel & Goodman asked for a new trial based on the late discovery of the

25  receiverships' corporate tax returns filed with the California Franchise Tax Board. These tax

26  returns proved that the returns shown to Mr. Antonini at trial were actually prepared and signed

27

28

§ 2255 Motion to Vacate, Set Aside or Correct Sentence

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1 by his company, APC, contrary to his testimony.[10] Antonini Decl., ¶ 13. This evidence brought

2 Topel & Goodman close to narrowing the gap in Mr. George's testimony that he had relied on

3 the receiverships' corporate tax returns to complete his own personal tax returns because he was

4 advised to do so by APC. Yet, as a result of its lack of investigation and, therefore, knowledge

5 of the facts, Topel & Goodman simply failed to elicit from Mr. Antonini the crucial testimony

6 needed to bridge the gap in Mr. George's testimony – to show why the reporting position taken

7 on the receiverships' corporate tax returns with respect to Mr. George's receiver's fees was

8 relevant to Mr. George's personal 1991 and 1992 returns.

9     At the hearing on the Motion for New Trial, the prosecution stated,

10     There has been no evidence whatsoever that [Orlando Antonini] was involved in
preparing the returns or he would be able to testify to that. The issue was, the
11     defense was, it was really two-fold: good faith belief he didn't have to report the
income until the receiverships were closed, and, two, his good faith reliance on
12     advice of counsel. The defense on the latter deduced absolutely zero evidence
from anyone except the defendant to support his argument that he had advice of a
13     CPA or accountant that he relied upon, which is usually the crucial evidence in
such a defense.
14

15 RT 12/03/03, pp. 18-19. In denying the Motion for New Trial, the Court concurred with the

16 prosecution's assertions:

17     First, on the question of diligence, there is no question that the defense
pulled out all the stops at one point in trying to obtain the evidence which they
18     ultimately obtained. The question the Court has is why they did so at the point
that they did [during trial] as opposed to earlier, both in terms of actually filing
19     the traditional forms with both the Franchise Tax Board and the IRS and why they
didn't . . . either subpoena those earlier and/or subpoena records from, if possible,
20     the attorneys from the receivership.

21

22                         * * * * *

23     It doesn't appear at this point that [Antonini] had anything to do with
[giving advice to Mr. George about his personal returns]; let alone had a
24

25

26 [10]At trial, Mr. Topel showed Mr. Antonini copies of tax returns for Royal Broadcasting, which
were purported to have been prepared by APC. Mr. Antonini was unable to definitively state
27 that APC had prepared them because the copies lacked any indicia of APC's having prepared
them. Antonini Decl., ¶ 10.

28

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1   conversation with Mr. George.

2       So, as I say, I think there is *a very significant disconnect here between*
3   *what the defendant is trying to show, which is almost a collateral point and the*
    *actual defense in this matter.*

4       For all of these reasons, I am going to find in the first instance that the
5   defendant did not use sufficient diligence to obtain the documents, but that is not
    the dispositive point here because even if he had, the court would still find that
6   the additional requirements were not met; that the evidence was neither
    cumulative nor merely impeaching, and that it probably would result in an
7   acquittal.

8       *Those last two points the court feels the defendant simply has not made*
9   *out for all of the reasons set forth by Mr. Denier and that I added to the record in*
    *this matter.*

10

11  RT 12/03/03 pp. 20-22 (emphasis added).

12      Had Topel & Goodman simply talked to Mr. Antonini before trial, it would have learned

13  of the relationship between the corporate and personal returns and been able to adequately

14  present this evidence at trial to forestall the government's repeated assertions that Mr. George

15  was untruthful in this regard. Its failure to conduct a reasonable investigation and present

16  corroborating evidence speaking to this issue was inexcusable and constitutionally deficient.

17              **(c)    Harry Gordon Oliver, II:**

18      Mr. Oliver is a CPA and attorney and a former employee of APC, who signed the 1991,

19  1992 and 1993 corporate tax returns of the receiverships upon which Mr. George modeled his

20  own personal 1991 and 1992 tax returns. Oliver Decl., ¶¶ 1, 21.  APC had been engaged by Mr.

21  George in his capacity as receiver for the various receiverships to provide bookkeeping,

22  accounting and tax advice services, to make necessary adjusting journal entries to the

23  receiverships' general ledgers, to assist in closing the receiverships' books and preparing the

24  final accountings for submission for approval to the Courts, and the preparation of the

25  receiverships' tax returns. Id., ¶¶ 4, 5.

26      In the course of providing tax and accounting assistance to the various receiverships, Mr.

27  Oliver researched the tax code and case law, and reviewed relevant documents for the

28  receiverships for which Mr. George was the Court appointed receiver. Id., ¶¶ 21-27.  This

§ 2255 Motion to Vacate, Set Aside or Correct Sentence

1   research led Mr. Oliver to conclude that the receiver's fees paid to Mr. George in 1991 and 1992

2   were contingent and should only be deducted by the receiverships for tax purposes at the time

3   the receiverships' final accountings were submitted to the Superior Courts for approval. Id.

4   Accordingly, Mr. Oliver instructed APC to make certain adjusting journal entries to the

5   receiverships' general ledgers to suspend the receiver's fees to Mr. George until 1993, the year

6   in which the receiverships' final accountings were submitted to the Courts for approval. Id., ¶¶

7   13-20, 23-25. Mr. Oliver's research and conclusions were the bases upon which Mr. Antonini

8   advised Mr. George to "consistently reflect his receivership income on his personal tax returns

9   in the same years in which the receiverships deducted the receivership fees in the corporate tax

10  returns." Antonini Decl., ¶ 24; Oliver Decl., ¶ 26.

11       Simple due diligence by Topel & Goodman, through a subpoena to the tax authorities, or

12  a summons issued to APC earlier than trial, for the corporate tax returns (an effort by Mr.

13  George which, incidentally, proved successful *after* trial), would have led Topel & Goodman to

14  Mr. Oliver as the individual who signed the receiverships' corporate tax returns. An attentive

15  attorney would then have followed up on this information with further questions and

16  investigation into the activities of Mr. Oliver that would have allowed it to answer the critical

17  questions of: (1) why all the receiver's fees to Mr. George, regardless of the years in which they

18  were paid, were deducted by the receiverships for tax purposes in 1993, and not in the years

19  paid; and (2) why Mr. George did not report the fees as income on his 1991 and 1992 returns.

20       As Mr. Oliver testifies in his Declaration, there was no tax implication to the

21  receiverships for deducting the receiver's fees in 1993, because the adjusting journal entries

22  were tax neutral. Oliver Decl., ¶ 24. "That is to say, if the receiver's fees had been shown as

23  tax deductions in the years they were advanced to Mr. George, the tax implications to the

24  receiverships would have been the same." Id. Rather, based on his review of the relevant

25  Supreme Court and California case law regarding receiverships, and the receivership documents

26  themselves, including the California Superior Court Orders establishing Mr. George's

27  compensation and motions filed against Mr. George in his capacity as receiver by the

28  receivership petitioners to deny him compensation, Mr. Oliver concluded that "the receiver's

§ 2255 Motion to Vacate, Set Aside or Correct Sentence

1 | fees were contingent for both the corporations and [Mr.] George." Id., ¶ 22.

2 | Mr. George provided Topel & Goodman with copies of the Royal and Diamond tax
3 | returns and called its attention to the fact that all the receiver's fees were deducted by the
4 | receiverships in 1993. George Decl., ¶ 42. Despite this unusual accounting treatment, Topel &
5 | Goodman still failed to investigate further or even attempt to seek out the individuals
6 | responsible for preparing the receiverships' tax returns.

7 | When it was learned after trial that Mr. Oliver had signed the receiverships' corporate
8 | tax returns, Topel & Goodman asked him to sign an affidavit that solely addressed the existence
9 | of his signature on the returns. Oliver Decl., ¶ 32. Topel & Goodman ultimately submitted this
10 | affidavit in conjunction with Mr. George's Motion for New Trial. Yet, even at this juncture,
11 | Topel & Goodman failed to make further inquiries of Mr. Oliver as to the bases for the
12 | treatment of the receiver's fees on the receiverships' returns, and as to whether he had had any
13 | discussions with Mr. George or Mr. Antonini as to how this treatment might have affected Mr.
14 | George's personal returns. Id. ¶ 28. Had they made these further inquiries, they would have
15 | learned that it was Mr. Oliver's opinion, based on his research, that the receiverships' returns
16 | and Mr. George's corresponding personal returns should consistently report the receiver's fees
17 | to Mr. George on the returns for the years in which approvals of the receiverships' final
18 | accountings were sought, not the years in which the receiver's fees were actually advanced to
19 | Mr. George. Id., ¶¶ 21-23, 26. They would further have learned that Mr. Oliver advised Mr.
20 | Antonini of his opinion, who, in turn, advised Mr. George. Id., ¶ 26.

21 | These were critical facts going directly to Mr. George's knowledge of the purported
22 | falsity of his 1991 and 1992 returns and his intent in filing those returns as he did. Had this
23 | evidence been sought by Topel & Goodman prior to trial and, thus, available for presentation at
24 | trial, it would have corroborated Mr. George's testimony that he received advice from Mr.
25 | Antonini, the bases for that advice and his reliance thereon.

26 | **(d)   Bonnie Newman:**

27 | Bonnie Newman was the business manager for Diamond broadcasting at the time it was
28 | placed into receivership and remained in that position until March 26, 1993, as the receivership

31            Case No. CR-01-0326 MMC
§ 2255 Motion to Vacate, Set Aside or Correct Sentence

1 || was winding down. Newman Decl., ¶¶ 3, 8. In this capacity, she was responsible for performing
2 || or overseeing all bookkeeping duties, including general ledger entries, billings, disbursements,
3 || bank reconciliations and financial reporting. Id., ¶ 5. She also prepared weekly and later
4 || monthly financial reports pursuant to Mr. George's instructions. Id. When making
5 || disbursements, it was Ms. Newman's "usual custom to record payments in the general ledger as
6 || the disbursements were made and to charge expenses to the appropriate general ledger
7 || accounts." Id., ¶ 6. This also included any disbursements to Mr. George consisting of his
8 || receivership fees. Id. Prior to resigning, she assisted in the transfer of Diamond's bookkeeping
9 || duties to Lisa Lubag at APC. Id., ¶ 8.

10 || Despite having been informed by Mr. George that Ms. Newman was responsible for
11 || Diamond's bookkeeping entries including the entries related to Mr. George's receiver's fees,
12 || Topel & Goodman never contacted Ms. Newman to inquire as to her involvement with the
13 || receiverships, any of the entries in its general ledger or how she dealt in the ledger with the
14 || disbursements to Mr. George's of his receiver's fees. Newman Decl., ¶¶ 6, 9; George Decl., ¶ 45.
15 || An investigation into this issue would have provided Topel & Goodman with an important link
16 || in the chain of evidence relevant to the issue of the reporting of Mr. George's receiver's fees.

17 || **(e)    Mark Shemaria:**

18 || Mark Shemaria was a CPA, financial analyst and business planner who was engaged by
19 || Mr. George in July, 1992, to provide accounting and financial reporting services for the Royal,
20 || Diamond and Stardust receiverships. Shemaria Decl., ¶¶ 3, 4. In this capacity, he oversaw the
21 || bookkeeping entries by the in-house accountants, including those of Bonnie Newman for the
22 || Diamond receivership, and, *inter alia,* ensured that payments, including the receiver's fees paid
23 || to Mr. George, were recorded as they were made. Id., ¶¶ 5, 6. While he was not personally
24 || involved in reclassifying the receiver's fees on the general ledgers when the receiverships' final
25 || accountings were prepared by APC for approval by the Courts, he was aware that
26 || reclassifications were made to recognize the contingent nature of the receiver's fees paid to Mr.
27 || George and to facilitate the consolidation of the prior years' receiver's fees expenses in the
28 || receiverships' final year. Id., ¶¶ 8-11.

§ 2255 Motion to Vacate, Set Aside or Correct Sentence

1    Mr. George advised Topel & Goodman of Mr. Shermaria's involvement with the
2  receiverships. George Decl., ¶ 45. Yet, Topel & Goodman never contacted him to inquire as to
3  his actions related to the receiverships or his knowledge related to the recording and later
4  reclassification of the receiver's fees paid to Mr. George. Shemaria Decl. ¶ 16. Again, this
5  evidence was an important part of a chain of relevant evidence on the issue of the reporting of
6  Mr. George's receiver's fees.

7        **(f)    Sean Svendsen:**

8        Sean Svendsen was an attorney who represented Mr. George in his capacity as
9  receiver for the Diamond, Royal and Stardust receiverships. Svendsen Decl., ¶ 3. In this role,
10  Mr. Svendsen prepared or oversaw the preparation of the proposed Courts' Orders establishing
11  the receiverships, which included provisions for the payment of receiver's fees to Mr. George.
12  Id., ¶ 9. These Orders, consistent with California case law at the time, provided that the
13  receiver's fees were contingent upon final court approval of the receiverships' final accounting.
14  Id., ¶¶ 9, 11, 12. Mr. Svendsen also submitted to the Superior Courts the motions necessary to
15  request approval of the receiverships' final accountings, and represented Mr. George in
16  defending against the receiverships' petitioners' objections to his receiver's fees Id., ¶¶ 4-8.

17        Mr. Svendsen worked closely with Mr. George and was, therefore, familiar with
18  his practices as a receiver. He was aware that Mr. George in his capacity as receiver actively
19  and ordinarily sought out the advice of legal professionals and accountants to guide him through
20  the issues with which a receiver is confronted, and would have been surprised, based on Mr.
21  George's usual conduct, if he had not done similarly for the preparation of the receiverships'
22  and his own returns. Id., ¶ 13. Mr. Svendsen believes it would have been reasonable under the
23  circumstances and the case law and Superior Court Orders, "[f]or Mr. George and his tax
24  advisors to conclude that advances to Mr. George were not income until they were no longer
25  contingent...." Id., ¶ 12.

26        Despite this critical evidence speaking directly to the issue of whether the
27  receiver's fees were income to Mr. George in 1991, 1992 or 1993, which had been made known
28  to Topel & Goodman by Mr. George, Topel & Goodman never contacted Mr. Svendsen to

33                                                          **Case No. CR-01-0326 MMC**
**§ 2255 Motion to Vacate, Set Aside or Correct Sentence**

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1 inquire as to any of these facts and conclusions. Id., ¶ 15; George Decl., ¶ 45. This evidence

2 would have directly corroborated Mr. George's testimony as to his actions in seeking out and

3 receiving the advice of tax professionals as to this issue and to preparing his returns in

4 accordance with the advice he received, and provided yet another individual who would have

5 testified as to the apparent state of the law at the time vis-a-vis receiverships.

### (g) **John M. Youngquist:**

7       Mr. Youngquist represented Mr. George from 1996 until 2001, when Mr. George

8 engaged Topel & Goodman to represent him at trial. Youngquist Decl., ¶¶ 2, 3. During the

9 course of his representation of Mr. George through the civil audit and criminal investigation,

10 Mr. Youngquist learned significant information about the facts underlying the charges against

11 Mr. George, in particular about advice Mr. George had received from Mr. Antonini, and made a

12 presentation on Mr. George's behalf to the U.S. Department of Justice Tax Division in an effort

13 to convince the government to not prosecute him. Id., ¶ 9, 17, 28.

14       After transferring his files to Topel & Goodman, and offering in writing to assist

15 it in learning about the case, Mr. Youngquist was never contacted by Topel & Goodman as to

16 any aspect of the case. Id., ¶ 3, 4, 36, 37, Exh. A. As stated in his Declaration,

17       After transferring the files, and to my surprise, I was never contacted by anyone
        from Topel & Goodman with regard to Mr. George's case, to discuss my
18      knowledge of the background and facts gained over my five years of representing
        Mr. George in the civil examination and criminal investigation, or to prepare for
19      or testify at Mr. George's criminal trial, or to provide a declaration or affidavit of
        any kind.
20

21 Id., ¶ 3. The files that Mr. Youngquist provided to Topel & Goodman contained critical

22 information about, among other things, APC's advice to Mr. George about how he should

23 prepare his 1991 and 1992 personal income tax returns, gathered over the several years leading

24 up to the indictment. A reasonable attorney would have contacted Mr. Youngquist under these

25 circumstances to obtain his understanding of the facts, evidence and potential witnesses. Yet

26

27

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1  Topel & Goodman failed even to take this simple step.[11]

2              **(i)    1993 Return:**

3          The essential elements for the charge of failure to file a return are that the defendant: (1)

4  owed tax in an amount requiring him to file a return; (2) failed to file the return by its due date;

5  and (3) acted for the purpose of evading his duty under the tax laws and not as a result of

6  accident or negligence. 26 U.S.C. § 7203; Ninth Circuit Model Criminal Jury Instruction 9.36.

7  In determining whether Mr. George was guilty of failing to file his 1993 return, the critical

8  element was the third, his intent.

9          As a preliminary matter, it is important to note that the government asserted that the

10  crime occurred on April 15, 1994, the original due date for the filing of the 1993 return.

11  However, contained in the government's trial exhibits was evidence of the fact that Mr. George

12  had sought an extension to August 15, 1994 to file the return.  The government never

13  acknowledged the existence of the extension to the jury.  More important, no evidence was

14  presented by the government to establish, much less prove beyond a reasonable doubt, Mr.

15  George's state of mind on the due date of the return, i.e., that on the due date he acted with the

16  specific purpose of evading his duty under the tax laws and not as a result of accident or

17  negligence.

18          Topel & Goodman should have pointed this out.  It had been advised of the existence of

19  relevant evidence, beyond the extension request, by Mr. George.  Yet, it neglected to present

20  any evidence of Mr. George's state of mind with respect to the non-filing of the 1993 return,

21  save Mr. George's own uncorroborated testimony.  This glaring omission was occasioned,

22  again, by Topel & Goodman's failure to conduct any pretrial investigation whatsoever that

23  would have easily led it to evidence that would have supported Mr. George's defense in this

24  regard.

25          In order to demonstrate Mr. George's lack of intent in his failure to file his 1993 return,

26

27  [11]  More facts vis-a-vis Mr. Youngquist are contained in the section, *infra*, discussing the 1993 return.

28

§ 2255 Motion to Vacate, Set Aside or Correct Sentence

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1  Topel & Goodman should have directed the jury to look to Mr. George's actions on April 15,

2  1994, the original due date for the return, as well as his subsequent actions that further shed light

3  on his state of mind as to the filing of the 1993 return. First, as noted above, Mr. George filed a

4  request to extend the return's due date to August 15, 1994. George Decl., ¶ 43, Exh. M. The

5  Ninth Circuit has held that the filing of an extension request discloses to the government that a

6  return is due and evidences the taxpayer's willingness to file the return. Edwards v. United

7  States, 375 F.2d 862 (9th Cir. 1967). A knowing and intentional failure to timely file a return

8  could be for the purpose of evasion, in which event the intent element would be established, or

9  for merely postponement or delay, in which event the intent element would not be established.

10  Id. The evidence here establishes the latter.

11  After filing his extension request, which was necessitated by the extremely disorganized

12  state of his records, in early 1995, Mr. George engaged Ms. Lubag, an accountant with APC, to

13  assist him in organizing and accumulating his records in an effort to ultimately prepare and file

14  the 1993 return. Lubag Decl., ¶¶ 4, 5; Antonini Decl., ¶ 23; George Decl., ¶ 21. Of course, this

15  begs the question: Would someone who never intended to file a return in the first place and who

16  had also alerted the IRS to the need for the filing of the return with an extension request, hire

17  and pay someone precisely for the purpose of preparing and ultimately filing that return?

18  Obviously, the answer to this question is no; Mr. George's retention of Ms. Lubag to assist him

19  in preparing this return, in conjunction with his extension request, are evidence that he

20  ultimately intended to file this return. Ms. Lubag could have testified as to the state of Mr.

21  George's records and his actions in hiring her and directing her preparation of the return, all of

22  which would have demonstrated his intention to file the return. Yet, despite having been

23  directed to her by Mr. George, Topel & Goodman never contacted her or presented her

24  corroborating testimony at trial. Lubag Decl., ¶ 6; George Decl., ¶¶ 45, 46.

25  Further, when his 1991 and 1992 returns were selected for audit, Mr. George was still

26  intending to ultimately file his 1993 return. RT 684. Mr. George retained Mr. Youngquist to

27  assist him in this audit and, when the question arose from Revenue Agent Pak as to his as yet

28  unfiled 1993 return, Mr. Youngquist advised Mr. George not to file the return until the issues

Case No. CR-01-0326 MMC

§ 2255 Motion to Vacate, Set Aside or Correct Sentence

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1  under audit for the 1991 and 1992 returns, which had a directly correlative effect on the

2  reporting position for the receiver's fees on the 1993 return, were decided. Youngquist Decl., ¶

3  2, 6-8; RT 681-82, 685, 689, 816-17, 819. Mr. George followed his attorney's advice and

4  testified at trial that he did intend to ultimately file his 1993 return, but that he had been delayed

5  for the above reasons in doing so. Id. Mr. George continued to follow this advice after he and

6  Mr. Youngquist learned that the matter had been referred to the IRS Criminal Investigation

7  Division. Youngquist Decl., ¶ 8; George Decl., ¶ 32.

8         This evidence clearly establishes that Mr. George did not criminally intend to fail to file

9  his 1993 return for the purposes of evading his tax duties. Rather, he took steps to get his

10 records in order in an effort to prepare an accurate return, by hiring Ms. Lubag, albeit some

11 months after the return's due date, and ultimately relied on the advice of his tax attorney not to

12 file the return at two critical junctures in the pre-indictment proceedings.

13        The government failed to establish that Mr. George permanently intended to not file his

14 1993 return, rather than simply intending to postpone its filing. Yet, this failure was allowed to

15 stand before the jury and this Court unchallenged by Topel & Goodman. Had Topel &

16 Goodman simply spoken with Ms. Lubag or Mr. Youngquist as to this issue prior to trial, they

17 would have learned the above information and been able to present it at trial to corroborate Mr.

18 George's testimony in this regard.

19        Because no one was presented by Topel & Goodman to provide corroborating testimony

20 in Mr. George's defense as to the critical issue of his intent, the government was free to argue

21 that Mr. George willfully failed to file his return for the purposes of evasion and was an

22 individual not to be believed. Yet, Mr. Youngquist's testimony would have completely

23 dispelled the prosecution's assertions to the jury that Mr. George was untruthful in his testimony

24 as to this issue.

25        For example, during its closing argument on the issue of whether Mr. George actually

26 received advice from Mr. Youngquist as to the filing of his 1993 return, the government asserted

27 that,

28        Mr. Topel argued to you that – why didn't the government call Mr. Youngquist?

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

> Why didn't the government call him to challenge this? Who did Mr. Youngquist represent? Who did he represent? The defendant. Why didn't they call him? They're the ones – his attorney. Take the stand, Mr. Youngquist. Tell me what advice you gave me. They very carefully did not call him.

RT 940. Yet, in his Declaration, Mr. Youngquist says that he advised Mr. George not to file the 1993 tax return, and would have so testified if called to do so. *See* Youngquist Decl., ¶ 8.

The government went on to argue,

> I cannot believe that John Youngquist, or any reputable tax attorney in the city, would tell somebody who is being investigated for 1993 not to file your '97, '98, '99, 2000 and 2001 years, which have nothing to do with the '93 return, right? ... [T]he purpose for asking that question ... when someone is being charged with failing to file returns, his '93, a pattern or practice of conduct is evidence that he intended not to file his return in '93. And ... that pattern or practice of not filing returns ... continues today.

RT 940-941. Yet, in his Declaration, Mr. Youngquist states that he advised Mr. George not to file his 1996 and 1997 tax returns pending the conclusion of the criminal proceedings, and would have so testified at trial if called to do so. *See* Youngquist Decl., ¶¶ 10-12.

Indeed, evidence of Mr. Youngquist's advice to Mr. George on this issue was already contained in the files the government produced to Mr. Youngquist, which were, in turn, transferred to Topel & Goodman more than a year before trial. *See* Youngquist Decl., ¶ 3. This evidence was contained in a Memorandum of Conversation between Mr. Youngquist and IRS-CID Special Agent Heather van de Velde on December 16, 1998, wherein Mr. Youngquist informed Ms. van de Velde that he had instructed Mr. George not to file his 1996 and 1997 returns while he was under criminal investigation. Youngquist Decl., ¶ 10, Exh. D. The prosecution was aware of this memorandum (indeed, it was listed as one of its exhibits for trial), yet it was able to denounce Mr. George's testimony on this issue because Topel & Goodman had been caught flat footed, unable to render effective assistance of counsel due to its failure to investigate – its failure to simply reach into its files and produce evidence provided by the government.

The government also stated at trial, "[y]ou heard testimony from Mr. George that Mr. Chu Pak, or revenue agent Pak, told him . . . 'hey, the '93 return is okay, as long as you get

§ 2255 Motion to Vacate, Set Aside or Correct Sentence

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1  it to me in at least 30 days.' It's a small little lie." RT 902. Yet again, in his Declaration, Mr.

2  Youngquist confirms Mr. George's testimony that Revenue Agent Pak provided Mr. George an

3  extension of time to file his 1993 return. Youngquist Decl. ¶ 7.

4         Had Topel & Goodman simply spoken to Mr. Youngquist, as it was invited and even

5  obligated to do under the circumstances, it would have learned this critical information and

6  could have placed him on the stand to testify on Mr. George's behalf. Each element of Mr.

7  Youngquist's testimony would have bolstered Mr. George's testimony at trial and assisted a

8  reasonable trier of fact in finding Mr. George innocent of willfully failing to file his 1993 return.

9  Yet, Topel & Goodman did not even take the simple step of calling Mr. Youngquist to discuss

10 these critical issues, even when Mr. George advised them as to what he would say.

### (ii)    Conclusion as to All Counts:

12        Each of the witnesses referenced in Sections II.B.2.a.i. and ii., above, had critical pieces

13 of evidence that spoke directly to the very elements of the crimes with which Mr. George was

14 charged. Yet, Topel & Goodman failed to conduct any reasonable pre-trial investigation, or any

15 investigation at all for that matter, to learn of this evidence. The bulk of the government's case

16 as to the element of willfulness for each of the crimes charged against Mr. George was premised

17 on its assertion that Mr. George lied when he testified that he had received and relied upon

18 advice as to how to file his 1991 and 1992 returns and whether to file his 1993 return. These

19 assertions went completely unrefuted by Topel & Goodman precisely because it rendered itself,

20 through its utter lack of pretrial investigation, completely incapable of presenting mitigating,

21 corroborating and exculpatory evidence. Had it presented this corroborating testimony, in all

22 probability, the jury would have believed Mr. George's testimony and entered an acquittal.

23        A lawyer who fails to adequately investigate and introduce into evidence

24 information that demonstrates his client's factual innocence, or raises sufficient doubts as to that

25 question to undermine confidence in the verdict, renders deficient performance. Lord, 184 F.3d

26 at 1093; *see also* Riley, 352 F.3d at 1318-19 (failure to interview potentially corroborating

27 witnesses fell below standard of reasonable professional). Here, Topel & Goodman's conduct

28 fell well below the objective standard of reasonableness and prejudiced Mr. George. Strickland,

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1  466 U.S. at 685.

2         Topel & Goodman made the strategic decision to place Mr. George on the stand

3  as the sole witness in his defense.  This decision, premised on not a shred of pre-trial

4  investigation, would prove fatal.  Topel & Goodman's abject failure to investigate any evidence

5  that might assist Mr. George in his defense rendered any tactical decisions it made in the course

6  of the pretrial and trial proceedings factually unsupported and thereby not entitled to deference.

7  Brown, 137 F.3d 1158 (tactical decision made without first procuring the information necessary

8  to make such a decision is not entitled to deference); Wiggins, 539 U.S. 510 (decision maker

9  must have an informed basis for the decision for deference to be accorded; decision based on

10  inattention not entitled to deference); Lord, 184 F.3d at 1093 (tactical decision not to introduce

11  exculpatory evidence based on cursory review not entitled to deference).

12         Topel & Goodman's multiple failures prejudiced Mr. George in that, had it conducted a

13  reasonable pre-trial investigation, Topel & Goodman would have uncovered and could have

14  presented at trial the critical evidence detailed above that would in all probability have resulted

15  in Mr. George's acquittal.  As such, Topel & Goodman rendered constitutionally ineffective

16  assistance of counsel and Mr. George is entitled to have his sentence vacated.

17

18                          **(iii)    Topel & Goodman Rendered Constitutionally Deficient
                                   Assistance of Counsel When it Failed to Call Expert
19                                 Witnesses for Trial or Sentencing or to Ask for An
                                   Evidentiary Hearing on Tax Loss**

20

21         During trial, the government introduced evidence through an IRS summary expert

22  witness that the total "tax loss" arising from Mr. George's conduct was $54,634.16. RT 653.

23  Topel & Goodman failed to call at trial any expert witness as to tax loss or to meaningfully

24  cross examine the government's expert witness.  Indeed, Topel & Goodman's entire cross

25  examination of the government's expert witness on the important issue of tax loss, spanned just

26  five pages of trial transcript and contained only one substantive question – whether a calculation

27  of tax loss, assuming Mr. George's receiver's fees were income in the year in which they were

28  approved by the Courts as opposed to the year of receipt, would have resulted in different tax

40                                                        Case No. CR-01-0326 MMC

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1    loss calculations. RT 654-58, 659-60. The government's expert reasonably responded that such

2    calculations would "certainly" have been different. RT 657-58.

3        This was a case about taxes. One of the most critical issues in a tax case is the amount

4    of tax loss arising from the defendant's conduct; it affects the entire criminal process, from the

5    initial decision to indict, plea negotiations, the presentation of evidence at trial, and ultimately,

6    the sentence. Strikingly, there is no evidence in Topel & Goodman's files – no memoranda,

7    notes of conversations, emails, faxes or evidence of any kind – indicating that it hired or

8    consulted with any forensic accountants or experts of any kind to address the issues of tax loss

9    prior to or for the purposes of trial. George Decl., ¶ 51. Nor was Mr. George ever contacted by

10   any forensic accountant purportedly hired by Topel & Goodman. Id., ¶ 52.

11       In contrast, during the course of the criminal investigation, Mr. George, through his

12   then-attorney, Mr. Youngquist, spoke with an attorney, William Looney, who suggested that

13   Mr. George retain the services of a forensic CPA/attorney who could both go over Mr. George's

14   financial records and be an expert witness at trial on the issue of tax loss. George Decl., ¶ 33.

15   Mr. George engaged and ultimately met with a forensic accountant/attorney, Morris Robinson,

16   on or around September 13, 2000. Robinson Decl., ¶¶ 7, 8. At that meeting, Mr. Robinson

17   reviewed the results of his initial analysis of Mr. George's financial records, and prepared a

18   letter containing his findings as to tax liability for 1991 through 1993. Id., ¶ 8, and Exh. A. Mr.

19   Robinson's letter was ultimately provided to Mr. Youngquist and it, along with Mr.

20   Youngquist's other files in the matter, were transferred to Topel & Goodman when it took over

21   the representation of Mr. George for trial. Youngquist Decl., ¶ 3.

22       The tax loss analysis completed by Mr. Robinson demonstrated that the total tax liability

23   for 1991 through 1993, assuming a reallocation of the receiver's fees to the 1991 and 1992

24   years, was $38,165, far less than the amount asserted by the government in the time leading up

25   to and including trial.[12] Robinson Decl., ¶¶ 7, 8. Yet, even armed with this information well

26

27

28   [12] Indeed, a tax loss of only $38,165 would ordinarily not justify the filing of a criminal
     (footnote continued)

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1   over a year before trial, Topel & Goodman never contacted Mr. Robinson to discuss his tax loss
2   computations, to build on the work already done for Mr. George, to inquire as to the reasons for
3   the discrepancies between his computations and those of the government, or to request that he
4   testify at trial to present his lower tax loss computations. Id., ¶ 11.

5        Even more striking, despite having obviously failed to hire a forensic accountant to
6   analyze the tax loss issue, Mr. Topel informed this Court in a pretrial hearing that, "We don't
7   want to lie .... I don't want to have to move forward on this case without an opportunity to have
8   my forensic accountant ... go over and under and around this so that we can start – cross-
9   examining witnesses...." and "we certainly have been consulting with a forensic accountant
10  about this case." RT 08/12/02, pp. 32, 39. Having a forensic accountant go over Mr. George's
11  financial records and the prosecution's expert witness report was characterized by Mr. Topel as
12  "... a major aspect of our case and our preparation of the case in defending Mr. George [because
13  of] the fact that the beginning year of this has him due a refund...," which, if true would have
14  had "major implications at least as to the intent/willfulness argument, because one presumes one
15  doesn't file a willfully false return in – to avoid getting a refund." Id,. p. 30.  The Court agreed
16  with this analysis:

17       [Getting a refund] isn't a defense that ultimately tax isn't due.  But it certainly
         goes toward why he might not have acted in bad faith because – you know, if he
18       thought they were going to give them money back, why wouldn't he have filed
         the return, that basically isn't a demand for money.
19

20  RT 08/12/02, pp. 33-34.  Given the dearth of evidence suggesting that Mr. Topel had even
21  consulted with a forensic accountant, much less retained one, Mr. Topel, it would appear, was
22  untruthful to this Court when he made these representations.

23       By failing to present any evidence at trial as to tax loss through its own expert witness or
24  to meaningfully cross-examine the government's expert witness, Topel & Goodman allowed the
25  government's tax loss figures to go unchallenged.

26  _____

27  indictment.  It is the IRS-CID's internal policy that cases with tax loss of less than $40,000 will
    not be referred for criminal prosecution.
28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1    After his conviction, for the purposes of sentencing, Mr. George hired a second forensic

2 accountant, Sander Stadtler, and a tax attorney, Randall Dick, to assist on the issue of tax loss.

3 George Decl., ¶ 56; Stadtler Decl., ¶ 4; Dick Decl., ¶ 3. Together, these two individuals made

4 detailed analyses of Mr. George's financial records and determined his tax liabilities for 1991,

5 1992, 1993 and 1994. Their final results, which they were prepared to defend in Court, were

6 significantly at odds with the government's computations and showed Mr. George's total tax

7 liability for these years, including Mrs. George's assumed tax liabilities as suggested by this

8 Court, to be just $33,664. Stadler Decl., ¶ 7. This contrasted with the prosecution's post-trial

9 tax loss computations for the same period totaling $128,528. Id. The tax loss analyses of Mr.

10 Stadtler and Mr. Dick, which contained detailed refutations of specific elements of the

11 government's post-trial tax loss computations (*see e.g.,* Stadtler Decl., ¶¶ 7 – 31; Dick Decl., ¶¶

12 4 – 8, 11), were provided to Topel & Goodman. George Decl., ¶ 56.

13    There were several discrepancies between the government's post-trial tax loss

14 computations and those of Mr. Stadtler and Mr. Dick. *See e.g.,* Stadtler Decl., *passim.* For

15 example, the government failed to credit Mr. George with various deductions to which he was

16 legally entitled, such as mortgage interest, business expenses, and charitable contributions. Id.,

17 ¶¶ 7-8, 14-26. The government also attempted to enhance Mr. George's sentence by asserting

18 that it had recently learned[13] that Mr. George had two items of unreported income in 1994 that

19 should be included as relevant conduct in the tax loss computations: (1) purported income of

20 $66,290 from the JJN receivership, and (2) purported income of $40,510.74 from a company

21 called Tempo Personal Communications. Id., ¶¶ 8, 28. Mr. Stadtler and Mr. Dick presented

22 evidence to the government that conclusively demonstrated that neither of these items

23

24 [13] During the negotiations, the government contended that it first became aware of these items only after significant post-trial investigation. However, had Topel & Goodman spoken to Mr.

25 Youngquist, as directed to do by Mr. George, it would have learned that the government's assertion of such late discovery of evidence "cannot be true.... The government was fully

26 informed by me about the escrow refund in October, 2000, more than two years before Mr. George's criminal trial ... [describing] in detail the circumstances surrounding the escrow

27 payment and refund thereof." Youngquist Decl., ¶¶ 26-29, 32-33.

28

ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111
LAW OFFICES
SIDEMAN & BANCROFT LLP

1 constituted income to Mr. George in 1994. Id., ¶¶ 29, 30.

2 As to the JJN issue, Mr. Stadtler concluded, on the basis of his review of the trial
3 testimony, other prosecutorial evidence not presented at trial, and public records on file with the
4 Federal Communications Commission and the Arizona Superior Court, that the $66,290, under
5 the government's theory at trial, would have been income to Mr. George in 1992 when it was
6 paid, not in 1994, and completed his calculations with this assumption in mind.[14] Id., ¶ 29, Exh.
7 G. As to the Tempo issue, Mr. Dick presented specific evidence to establish that these funds
8 constituted the return of an escrow payment to Mr. George's company, Telegraph Paging. Dick
9 Decl., ¶ 6, Exhs. A, B. "Mr. George had paid $40,000 into an escrow account in connection
10 with his efforts to purchase a paging company. When the proposed purchase fell through, the
11 escrow payment was refunded to Mr. George along with $510.74 of interest." Id. Further as to
12 the Tempo issue, Mr. George identified to Topel & Goodman an individual named Roger
13 Metzler who had represented Mr. George in his attempt to purchase the paging company and the
14 subsequent efforts to recover the escrow payment. George Decl., ¶ 45; Metzler Decl., ¶¶ 4, 5.
15 The government rejected Mr. Stadtler's and Mr. Dick's analyses as to these items, as well as to
16 the majority of the deductions claimed.

17 Each of these items had the effect of increasing the tax loss computations. While Mr.
18 Stadtler and Mr. Dick worked closely with Topel & Goodman in the effort to negotiate a tax
19 loss figure, it eventually became clear that the parties were not going to agree as to the various
20 issues. At that point, Topel & Goodman should have, but failed to ask for an evidentiary
21 hearing at which the critical testimony and information of Mr. Stadtler and Mr. Dick could have
22 been presented to refute and significantly reduce the government's tax loss computations.
23 Stadtler Decl., ¶¶ 5, 6, 32, 33; Dick Decl., ¶¶ 12-14.

24 On November 19, 2003, this Court held a hearing regarding tax loss where it made
25 various legal rulings on relevant conduct issues, determining that the government would be

26

27 [14] Under the advice received from Mr. Antonini by Mr. George, the JJN income, in fact, would
have been income to Mr. George in 1993.

28

Case No. CR-01-0326 MMC
§ 2255 Motion to Vacate, Set Aside or Correct Sentence

1 | permitted to prove by a preponderance of the evidence that losses arising from Mrs. George's
2 | purportedly false tax returns, as well as purported losses arising from 1994, an uncharged year,
3 | constituted relevant conduct, thus includable in the tax loss computations for sentencing. RT
4 | 11/19/03, pp. 43-54. Despite having received the tax loss computations prepared by Mr. Stadtler
5 | and Mr. Dick, which significantly contrasted with and refuted key elements of the government's
6 | computations, Topel & Goodman did not call either Mr. Stadtler or Mr. Dick to either prepare
7 | for or to testify at this hearing, nor did they request an evidentiary hearing at which this contrary
8 | evidence could have been presented to undercut the government's calculations. Stadtler Decl., ¶¶
9 | 5, 6, 32, 33; Dick Decl., ¶¶ 9, 12 – 14.

10 | Following this Court's determinations as to relevant conduct, and the submission of the
11 | Pre-sentence Report, wherein the Office of Probation opined, without supporting evidence, that
12 | the total tax loss arising from Mr. George's conduct was $149,685 (Stadler Decl., ¶ 7), and given
13 | Topel & Goodman's failure to request an evidentiary hearing to challenge the prosecution's or
14 | Office of Probation's calculations to substantiate a lower tax loss figure, Mr. George was left
15 | with the choice of either (1) attempting to negotiate a lower tax loss number starting from the
16 | government's inflated (yet refutable) computations, or (2) attending a sentencing hearing at
17 | which the sole evidence of tax loss would be comprised of the government's unchallenged
18 | computations. Mr. George made the only practical choice under the circumstances – the entry
19 | into a Stipulation as to Tax Loss that reflected a tax loss range of $70,000 - $120,000, just
20 | $8,528 less than the government asserted was due. The Stipulation as to Tax Loss provided as
21 | follows:

22 | IT IS HEREBY STIPULATED AND AGREED, by and between the
plaintiff, the United States of America, by and through its counsel, Assistant
23 | United States Attorney David L. Denier, and the defendant, Randolph George, by
and through his counsel, Marcus S. Topel and Daniel F. Cook, that *for purposes*
24 | *of sentencing only, and based on this Court's prior ruling on tax allocation and*
*tax loss issues*, the tax loss under U.S.S.G. § 2T1.1 is more than $70,000 but less
25 | than $120,000, resulting in a base offense level of 14 pursuant to U.S.S.G. §
2T1.4 (1994).

26 |
IT IS FURTHER STIPULATED AND AGREED that the defendant,
27 | Randolph George, in entering into this stipulation based upon the Court's prior
rulings on tax allocation and tax loss issues, *disputes this Court's decisions*
28 | *already made on tax allocation and tax loss issues, and fully reserves his right to*

*appeal all tax allocation and tax loss rulings made previously by this Court or based upon this stipulation.*

IT IS FURTHER STIPULATED AND AGREED that should the defendant prevail on appeal of this Court's tax allocation and/or tax loss rulings, that the base offense level under the Sentencing Guidelines may be reduced.

"[A]n attorney's failure to investigate, either during the guilt phase or the sentencing phase, can amount to constitutionally deficient performance." Silva, 279 F.3d at 842 (and Ninth Circuit cases cited therein). Moreover, where there is a disputed issue of material fact at sentencing, as tax loss surely is, an attorney ordinarily has a duty to ask the Court to conduct an evidentiary hearing to resolve the disputed issue. *See generally*, ABA Standard from Criminal Justice, Sentencing Alternatives and Procedures at § 18-6.4 & commentary at pp. 18-460 to 18-466 (1980 ed. & 1986 Supp.).

No forensic accountants or expert witnesses of any kind were called on by Topel & Goodman to testify on Mr. George's behalf, either at trial or at sentencing. There was no good reason for Topel & Goodman to fail to retain a forensic accountant or call any expert witness to testify in Mr. George's defense on the issue of tax loss, and every good reason to do so. As highly regarded attorneys holding themselves out as experienced in criminal defense and having defended "a lot of tax cases" (*see* Mr. Topel's statement in this regard at RT 08/12/02, p. 23), Topel & Goodman would have objectively known the critical importance of engaging a forensic accountant for the purpose of presenting testimony and evidence establishing tax loss and refuting the government's numbers. Yet, even in the face of very clear differences between the prosecution's numbers and those of the experts hired by Mr. George, the analyses of which had been provided to Topel & Goodman and which would have triggered any reasonable attorney who had reasonably educated himself as to the facts to ask for an evidentiary hearing, Topel & Goodman still failed to request an evidentiary hearing on the issues of tax loss.

Had Topel & Goodman actually engaged a forensic accountant, as it represented to this Court that it had (see RT 08/12/02, pp., 32, 34, 39), or had it simply utilized the ones placed before it by Mr. George, it would have been able to present at an evidentiary hearing reasonable and well-supported evidence that the tax loss figures from Mr. George's conduct were well

1  below the figures calculated by the government. This glaring and unjustified failure resulted in

2  the government's tax loss computations going unchallenged, despite the fact that they contained

3  a series of misleading and simply untrue allegations (*see* Stadtler Decl., ¶ 28 (the government's

4  assertion is "prepostrous;"), ¶ 30 "I find no credible evidence"); Dick Decl., ¶ 10 ("Mr. Denier's

5  statement [regarding a return of escrow] was not only disingenuous it was simply not true"),

6  Youngquist Decl., ¶¶ 24-25, "the government misleads the court," and ¶ 33, "the government's

7  suggestion simply cannot be true"), allegations of which Topel & Goodman had been made

8  aware by Mr. George's experts.

9       Following this debacle, Mr. George had no choice but to enter into the Stipulation as to

10  Tax Loss, which contained numbers far higher than Mr. George's own experts could have easily

11  established the losses to be. Yet, without presenting evidence from these expert witnesses at any

12  evidentiary hearing, Topel & Goodman left itself unarmed to negotiate tax loss figures at or

13  closer to those established by Mr. George's experts or lower than contained in the Stipulation.

14  This prejudiced Mr. George by subjecting him to a higher sentence than was warranted under the

15  circumstances, a result that could have been avoided had Topel & Goodman simply fulfilled its

16  reasonable obligations of investigation and presented sufficient expert evidence as to tax loss.

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

47

§ 2255 Motion to Vacate, Set Aside or Correct Sentence

1

2

3

        (iv)     **The Prejudice Occasioned by Topel & Goodman's Ineffective Assistance of Counsel at Trial and Sentencing is Evident in the First Appeal and the Ninth Circuit's Opinion Thereon**

4     By failing to introduce the critical evidence detailed above that would have corroborated

5     Mr. George's testimony at trial as to his lack of intent as to the crimes charged, Topel &

6     Goodman allowed to remain unchallenged an enormous, yet factually unsupported, credibility

7     gap repeatedly capitalized on by the government in its closing arguments. Without any

8     refutation of the government's allegations of Mr. George's untruthfulness by Topel &

9     Goodman, either through the testimony of any corroborating witnesses, documentary evidence

10    or argument, the government was able to repeat its assertions on appeal that Mr. George

11    "concocted" his defense and simply was not to be believed.[15]

12    For example, the government asserted on appeal that "[n]o credible evidence was

13    adduced to establish that George relied in good faith on the advise [sic] of Antonini or any other

14    accountant at Antonini Professional Corporation ("APC")." *See* Brief for the United States as

15    Appellee, p. 12. It further asserted that "[d]efense counsel never asked Antonini whether he

16    personally advised George to report the receiver fees on his personal returns in the year that the

17    court approved the final accounting of the receivership and not when the fees were received."

18    Id., p. 18. And, "[t]he defense simply failed to elicit testimony from Antonini, or some other

19    employee of APC, which corroborated George's testimony." Id., p. 45. The government went

20    on to deride Mr. George's testimony as a "story about what Mr. Antonini told him,"

21    characterizing the evidence of Mr. George's lack of credibility as "overwhelming." Id.

22    Having failed to conduct a reasonable pretrial investigation that would have allowed it to

23    introduce significant corroborating evidence of Mr. George's truthfulness regarding the relevant

24

25

26    [15] And, as this Court is aware, the allegations of Mr. George's purported untruthfulness have infused the entire proceedings in this matter following the first appeal. *See e.g.,* RT 4.12.06, pp. 28-30 ("I would be prepared to find by any standard that's required, including beyond a reasonable doubt, that the defendant was not truthful on the stand.")

27

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1    issues before the jury and this Court, Topel & Goodman rendered itself simply unable to support

2    any argument to the Ninth Circuit that Mr. George was truthful at trial. The prejudicial effect of

3    these failures is evidenced by the Ninth Circuit's opinion, George, 420 F.3d 991, wherein it

4    stated that Mr. George suffered from an "apparent credibility problem." Id., pp. 1001-02.

5    Indeed, pointing to one of the very claims of Topel & Goodman's ineffective assistance of

6    counsel of which Mr. George complains in this motion, the Ninth Circuit further observed as to

7    the critical element of Mr. George's defense – his good faith reliance on the advice of his tax

8    advisors regarding the reporting of the receiver's fees – that,

9    > Notably, defense counsel never asked Antonini whether he personally advised
10   > George to report the receiver fees on his personal returns in the year that the court
     > approved the final accounting of the receivership, as opposed to the year the fees
11   > were actually received. George was the sole witness who testified to that effect,
     > and the jury apparently found his testimony to be less than credible. Thus, we
12   > reject George's good faith defense.

13   Id.

14   Had Topel & Goodman conducted the reasonable investigation that the Constitution, the ABA

15   Standards on Criminal Justice and the cases interpreting them require (see e.g., Sanders v.

16   Brown, 171 Fed. Appx. 558, 592 (9th Cir. 2006)(the ABA Standard 4-4.1 "suggests that a

17   lawyer's duty to investigate is virtually absolute...."); see also Silva v. Woodford, 279 F.3d 825,

18   838-39 (9th Cir. 2000)(a failure to investigate constitutes ineffective assistance of counsel), it

19   would have found significant evidence speaking directly to the issues of Mr. George's lack of

20   intent that could have been presented at trial to corroborate his testimony. Had it presented such

21   evidence to the jury, there is a high probability that Mr. George would have been acquitted,

22   negating, of course, the necessity for an appeal.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

§ 2255 Motion to Vacate, Set Aside or Correct Sentence

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

### 3. <u>Mr. George is Entitled to an Evidentiary Hearing</u>

Mr. George submits that the evidence presented in this motion and accompanying declarations[16] demonstrates that he is entitled to the relief requested – that the Judgment and Sentence against him be vacated, set aside or corrected. If the Court is not prepared to grant this relief on the basis of this motion and supporting declarations, Mr. George is entitled to, and respectfully requests, an evidentiary hearing at which this critical evidence can be more fully presented. Where a movant has alleged facts which, if true, entitle him to relief, he is entitled to a full evidentiary hearing to establish the facts he alleges. <u>Siripongs v. Calderon</u>, 35 F.3d 1308, 1318 (9th Cir. 1994); <u>Hendricks v. Vasquez</u>, 974 F.2d 1099 (9th Cir. 1992); <u>Doganiere</u>, 914 F.2d at 168; *see also* <u>Sanders</u>, 171 Fed.Appx. 588 (9th Cir. 2006)(reversing district court ruling that denied the defendant an evidentiary hearing where motion demonstrated that defense counsel failed to fulfill duty to complete a sufficient investigation of mitigating factors).

### III. <u>CONCLUSION</u>

Mr. George did not enjoy the effective assistance of counsel, as guaranteed by the Sixth Amendment. Topel & Goodman failed to conduct a reasonable pretrial investigation that rendered it unaware of, and therefore, unable to present in Mr. George's defense critical and corroborating evidence, which, if presented, would have demonstrated Mr. George's innocence of the crimes charged resulting, in all probability, in an acquittal. Mr. George, therefore, respectfully requests that the Court vacate, set aside or correct the Judgment and Sentence entered against him. If the Court is not prepared to order the requested relief on the basis of this

---

[16] In this Motion, Mr. George has highlighted some of the most egregious examples of Topel & Goodman's ineffective assistance of counsel. Testimony regarding additional errors by Topel & Goodman are contained in the twelve declarations submitted herewith. Mr. George urges the Court to thoroughly review these declarations in order to obtain a more complete picture of the scope and breadth of Topel & Goodman's ineffective assistance of counsel rendered in this case.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1  motion and supporting declarations, Mr. George respectfully requests that the Court hold an

2  evidentiary hearing at which this critical evidence can be more fully presented.

3                                            Respectfully submitted,

4                                            SIDEMAN & BANCROFT LLP

5

6  Dated:    4 | 2 5 | 0 Y              By:

7                                            EMILY J. KINGSTON
                                             Counsel for Randolph George

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

§ 2255 Motion to Vacate, Set Aside or Correct Sentence

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

I am employed in the county of aforesaid; I am over the age of eighteen years and not a party to the within entitled action; my business address is One Embarcadero Center, Eighth Floor, San Francisco, California 94111-3629.

On April 25, 2008, I served the following documents(s) described as **DEFENDANT'S MOTION PURSUANT TO 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE** on the interested party(ies) in this action by placing true copies thereof enclosed in sealed envelopes and/or packages addressed as follows:

Scott N. Schools, U.S. Attorney          Counsel for the United States of America
David L. Denier, Assistant U.S. Attorney
Office of the United States Attorney
450 Golden Gate Avenue
San Francisco, CA 94102

Marcus S. Topel, Esq.
Daniel F. Cook, Esq
Kasowitz, Benson, Torres, and Friedman
101 California Street, Suite 2050
San Francisco, California 94111

☒    **BY HAND DELIVERY:** I caused such envelopes to be delivered by hand by a Western Messenger delivery person to the addressees listed above. I declare that this service was made at the direction of a member of this Bar.

Executed on April 25, 2008, at San Francisco, California.

MICHELLE WASHINGTON

7061\487335v1

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111